# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ANNIE LOIS GRANT; QUENTIN T. HOWELL; ELROY TOLBERT; THERON BROWN; TRIANA ARNOLD JAMES; EUNICE SYKES; ELBERT SOLOMON; and DEXTER WIMBISH, <br><br> Plaintiffs, <br><br> v. <br><br> BRAD RAFFENSPERGER, in his official capacity as the Georgia Secretary of State; SARA TINDALL GHAZAL, in her official capacity as a member of the State Election Board; ANH LE, in her official capacity as a member of the State Election Board; EDWARD LINDSEY, in his official capacity as a member of the State Election Board; and MATTHEW MASHBURN, in his official capacity as a member of the State Election Board, <br><br> Defendants. | CIVIL ACTION FILE NO. 1:22-CV-00122-SCJ |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

LEGAL STANDARD............................................................................................2

ARGUMENT .........................................................................................................3

I.     Section 2284(a)'s three-judge requirement does not apply to Plaintiffs' purely statutory claims. .........................................................................3

        A.     Basic textual analysis refutes Defendants' interpretation of Section 2284(a). .......................................................................3

        B.     Legislative history refutes Defendants' interpretation of Section 2284(a). .......................................................................9

II.    Section 2 confers a private right of action. ........................................13

III.   Immediate appeal of the Court's ruling is not appropriate. ...............18

CONCLUSION ...................................................................................................20

## INTRODUCTION

Defendants' motion to dismiss and accompanying request for an interlocutory appeal constitute a thinly veiled attempt to run out the clock so that the Court cannot provide preliminary injunctive relief ahead of the 2022 elections. Their gambit—premised on strained readings of statutory text and a disregard for five decades of Voting Rights Act jurisprudence—should be denied.

Federal law requires that a three-judge court be convened "when an action is filed challenging *the constitutionality of* the apportionment of congressional districts or the apportionment of any statewide legislative body." 28 U.S.C. § 2284(a) (emphasis added). Here, Plaintiffs have not challenged the constitutionality of the new maps for the Georgia State Senate and Georgia House of Representatives; they assert purely statutory claims under Section 2 of the Voting Rights Act of 1965. Accordingly, under the plain language of the statute, a three-judge court is not required in this case. Nor would a three-judge court even be permissible: because jurisdictional statutes are mandatory and limiting, and statutory challenges to legislative districting plans fall outside the scope of Section 2284(a), a three-judge court cannot hear Plaintiffs' claims.

Defendants similarly fail to offer any convincing reason why this Court should depart from more than a half-century of Voting Rights Act jurisprudence and be the

first to conclude that Section 2 lacks a private right of action. Absent from their motion is acknowledgement that the U.S. Supreme Court has concluded exactly the opposite. The Supreme Court's recognition of a private right of action under Section 2 was far from surprising, as the Voting Rights Act's text compels that conclusion. But even if one ignores its text, it could not be clearer that Congress has always intended for private litigants to bring suit under Section 2.

The arguments raised by Defendants are neither serious nor complex. Their motion to dismiss and request to delay these proceedings through an extraordinary interlocutory appeal should be expeditiously denied.

## LEGAL STANDARD

"A complaint should be dismissed under Rule 12(b)(1) only where the court lacks jurisdiction over the subject matter of the dispute." *Callen v. Daimler AG*, No. 1:19-CV-1411-TWT, 2021 WL 4523436, at *2 (N.D. Ga. Oct. 4, 2021); *see also Lifestar Ambulance Serv., Inc. v. United States*, 365 F.3d 1293, 1295 (11th Cir. 2004).

"[A] defendant may move to dismiss a complaint for failure to state a claim upon which relief may be granted. A complaint has failed to state a claim if the facts as pled, accepted as true, do not state a claim for relief that is plausible on its face." *Miller v. Thomas, Kennedy, Sampson & Tompkins, LLP*, No. 1:20-CV-04717-SCJ,

2021 WL 4815201, at *3 (N.D. Ga. June 17, 2021) (citation omitted). "In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff." *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010).

## ARGUMENT

I. **Section 2284(a)'s three-judge requirement does not apply to Plaintiffs' purely statutory claims.**

Defendants' request for a three-judge court ignores Section 2284(a)'s plain text. Their disregard for the statute's explicit limitations is apparent even in the introduction to their motion: they fault Plaintiffs for "fail[ing] to request a three-judge court for an action involving 'the apportionment of congressional districts or the apportionment of any statewide legislative body.'" Br. in Supp. of Defs.' Mot. to Dismiss ("Mot.") 2, ECF No. 38-1 (quoting 28 U.S.C. § 2284(a)). Conspicuously absent from their statutory recitation is the essential qualifier "*the constitutionality of*," which limits the reach of Section 2284(a) only to constitutional challenges—and which Defendants admit Plaintiffs do not assert in this case.

A. **Basic textual analysis refutes Defendants' interpretation of Section 2284(a).**

In full, Section 2284(a) reads: "A district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed

challenging *the constitutionality of* the apportionment of congressional districts or the apportionment of any statewide legislative body." 28 U.S.C. § 2284(a) (emphasis added). Accordingly, "[a] claim solely alleging a Section 2 violation falls outside a plain reading of § 2284. Such a claim is neither a constitutional challenge nor 'when otherwise required by Act of Congress.'" *Chestnut v. Merrill*, 356 F. Supp. 3d 1351, 1354 (N.D. Ala. 2019) (quoting 28 U.S.C. § 2284(a)); *accord Johnson v. Ardoin*, No. 18-625-SDD-EWD, 2019 WL 2329319, at *3 (M.D. La. May 31, 2019) ("[T]he three-judge statute applies only when the constitutionality of apportionment is being challenged.").

Here, Plaintiffs do not challenge the constitutionality of Georgia's state legislative districts. They assert purely statutory challenges to Georgia's state legislative districting plans under Section 2. *See* Compl. ¶¶ 84–98, ECF No. 1. Because there can be no serious suggestion that this case involves a contest over the constitutionality of an apportionment plan, a three-judge court cannot be convened in this case. *See Rural W. Tenn. African Am. Affairs Council, Inc. v. Sundquist*, 209 F.3d 835, 838 (6th Cir. 2000) (three-judge court that was convened when plaintiffs challenging state legislative map asserted Section 2 claim *and* constitutional claim disbanded when plaintiffs withdrew their constitutional claim); *Bone Shirt v. Hazeltine*, 336 F. Supp. 2d 976, 980 (D.S.D. 2004) (single-judge court heard Section

2 challenge to state legislative map after three-judge court resolved Section 5 claim and disbanded); *Old Person v. Brown*, 182 F. Supp. 2d 1002, 1003 (D. Mont.) (single-judge court heard Section 2 challenge to state legislative map), *aff'd*, 312 F.3d 1036 (9th Cir. 2002).

In claiming that a three-judge court is required in this case, Defendants contort Section 2284(a)'s language beyond its "ordinary meaning," the touchstone of statutory interpretation. *Levin v. United States*, 568 U.S. 503, 513 (2013) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)); *see also* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 148 (2012) (explaining that statutory words "are to be understood in their ordinary, everyday meanings"). No ordinary reader would come away from Section 2284(a) believing that its restriction to "constitutional[]" challenges applies to litigation over congressional plans but not state legislative plans. Defendants' "avant-garde" interpretation of the statute should thus be rejected out of hand. *Thomas v. Reeves*, 961 F.3d 800, 802 (5th Cir. 2020) (en banc) (per curiam) (Costa, J., concurring) (plurality concurrence "reject[ing] the unprecedented notion that statutory challenges to state legislative districts require a special district court").

Nor can Defendants' interpretation be squared with the series-qualifier canon, a fundamental principle of statutory construction rooted in "a matter of common

English." Scalia & Garner, *supra*, at 147. When speaking of "challeng[es]" to redistricting plans, Section 2284(a) places "the constitutionality of" before both "the apportionment of congressional districts" *and* "the apportionment of any statewide legislative body." The "constitutionality" qualifier therefore applies equally to litigation over both congressional *and* state legislative plans. "The canon's intuitive nature explains why the Supreme Court, other courts, and leading treatises have taken that reading [of Section 2284(a)] as a given." *Thomas*, 961 F.3d at 803 (Costa, J., concurring); *see also Harris v. Ariz. Indep. Redistricting Comm'n*, 578 U.S. 253, 257 (2016) (parenthetically describing Section 2284(a) as "providing for the convention of [a three-judge] court whenever an action is filed challenging the constitutionality of apportionment of legislative districts"); *Armour v. Ohio*, 925 F.2d 987, 989 (6th Cir. 1991) (en banc) (Section 2284(a)'s three-judge requirement is triggered "once it becomes clear that there exists a non-frivolous constitutional challenge to the apportionment of a statewide legislative body"); 22 James W. Moore et al., *Moore's Federal Practice* § 404.03(2) (3d ed. 2019) (Section 2284(a) "is limited to federal constitutional claims"); 17A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4235 (3d ed. 2007) (Section 2284(a) should apply to "all federal constitutional challenges that could result in a reapportionment").

Ignoring this routine application of the series-qualifier canon—and normal usage of the English language—Defendants propose a reading of Section 2284(a) that hinges entirely on the inclusion of an extra "the." According to Defendants, by using "the" before "apportionment of any statewide legislative body," Congress intended that purely statutory challenges to legislative plans *also* be heard by a three-judge court. Mot. 6–7. But Congress "does not . . . hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). It is worth imagining the myriad ways by which Congress could have easily made Defendants' interpretation clear when drafting Section 2284(a):

- "A district court of three judges shall be convened . . . when an action is filed challenging the constitutionality of the apportionment of congressional districts or **any challenge to** the apportionment of any statewide legislative body."

- "A district court of three judges shall be convened . . . when an action is filed challenging **the apportionment of any statewide legislative body or the constitutionality of the apportionment of congressional districts**."

- "A district court of three judges shall be convened . . . when an action is filed challenging the constitutionality of the apportionment of congressional districts or **the legality of the apportionment of any statewide legislative body, constitutional or otherwise**."

Notwithstanding these readily available alternatives, Defendants contend that Congress relied on the article "the" to create a significant asymmetry between the application of Section 2284(a) to congressional challenges and its application to legislative challenges—and assumed that this meaning would be clear to any ordinary reader. "Calling the contested 'the' a textual mousehole is being generous." *Thomas*, 961 F.3d at 807 (Costa, J., concurring).

The repeated "the" in Section 2284(a) cannot bear the weight Defendants place on it even by elevating it to the status of a series determiner. Mot. 6. As Scalia and Garner explain, it is commonplace for drafters to repeat words without intending to signal meaning. *See* Scalia & Garner, *supra*, at 176–77. That is surely the case with commonplace articles such as "a" and "the." Here, "the use of 'the' before each parallel term would not cut off the modifier 'constitutionally of' in everyday English." *Thomas*, 961 F.3d at 804 (Costa, J., concurring). To borrow Judge Costa's example, if a newspaper reported that "[t]he NCAA is investigating the recruiting practices of the football program and the basketball program," no English speaker would understand it to mean that the NCAA's "investigation into the football program is limited to recruiting violations while the investigation into the basketball program might also look into point-shaving or ticket-scalping violations." *Id.* (Costa, J., concurring) (quoting *Thomas v. Bryant*, 919 F.3d 298, 306 (5th Cir. 2019)).

8

Defendants offer no reason to think that readers of Section 2284(a) would reach a different conclusion.[1]

Ordinary, everyday users of English would read Section 2284(a) to apply only to constitutional challenges to redistricting plans. Because Plaintiffs here do not assert a constitutional challenge, Section 2284(a) does not apply.[2]

## B. Legislative history refutes Defendants' interpretation of Section 2284(a).

Even if Section 2284(a)'s plain language did not make clear that it applies only to constitutional challenges, its statutory history ends the inquiry in Plaintiffs' favor.

---

[1] Defendants fault Judge Costa's analysis by claiming that his plurality concurrence failed to consider "context," to which "the series modifier canon is highly sensitive." Mot. 9 (quoting *Thomas v. Bryant*, 938 F.3d 134, 146 (5th Cir. 2019)). But the relevant context is not, as Defendants claim, the doctrine of federalism; rather, it is the *textual* context—in other words, what the rest of Section 2284(a) says. When one considers the statutory provision as a whole, its ordinary meaning is clearly that it applies only to constitutional challenges to both congressional *and* state legislative plans.

[2] Defendants wisely choose not to offer the final textual argument that the State of Mississippi presented in *Thomas*, which wrongly asserted that a natural reading of Section 2284(a) would render the "the" on which Defendants focus superfluous. 961 F.3d at 806–07 (Costa, J., concurring). The non-superfluity principle is far from a hard-and-fast rule—particularly when it comes to articles such as "the"—and should not "let minor repetition steer us toward a farfetched" reading of the statute. *Id.* at 806 (Costa, J., concurring). And at any rate, *Defendants'* reading of Section 2284(a) would render the "the" before "apportionment of congressional districts" superfluous. *Id.* at 806–07 (Costa, J., concurring).

Congress created the three-judge district court to address the rise in *constitutional* challenges to state statutes following *Ex parte Young*, 209 U.S. 123 (1908), and later expanded its use in response to the federal judiciary's invalidation of President Franklin Roosevelt's New Deal reforms on *constitutional* grounds. *See Thomas*, 961 F.3d at 807–08 (Costa, J., concurring). By the mid-1970s, it became clear that the three-judge requirement was "burdening the Supreme Court as well as lower courts and had resulted in procedural complexities," and so Congress significantly *narrowed* the universe of cases where three-judge courts would be required. *Id.* at 808 (Costa, J., concurring). In so doing, Congress "nonetheless retained the procedure for a small set of important cases: constitutional challenges to redistricting for congressional and state legislative seats, then-recent phenomena in the aftermath of the revolutionary one person, one vote line of cases." *Id.* (Costa, J., concurring) (citing *Reynolds v. Sims*, 377 U.S. 533 (1964)).

It is against this backdrop—Congress expressly *limiting* the three-judge requirement—that Defendants suggest Congress also sub silentio *expanded* that universe to include, for the very first time, statutory redistricting challenges. This theory is simply implausible, particularly given "that Congress's 'one reason' for creating three-judge courts was 'to save state and federal statutes from improvident doom, *on constitutional grounds*, at the hands of a single federal district judge.'" *Id.*

(Costa, J., concurring) (quoting *Gonzalez v. Automatic Emps. Credit Union*, 419 U.S. 90, 97 (1974)).

Given Congress's clear intent to limit the number of costly and procedurally complex three-judge proceedings, controlling case law requires that provisions calling for three-judge courts—like Section 2284(a)—"be narrowly construed." *Sands v. Wainwright*, 491 F.2d 417, 421 (5th Cir. 1973) (en banc) (quoting *Phillips v. United States*, 312 U.S. 246, 250 (1941));[3] *cf. Finch v. Weinberger*, 407 F. Supp. 34, 40 (N.D. Ga. 1975) (three-judge court) ("As a general rule, the policy of avoiding unnecessary constitutional adjudication would seem to compel adjudication of [] statutory claims first, and adjudication of those claims by a single judge."). Three-judge courts may be "convened only where compelled by the express terms of the statute," *United States v. Texas*, 523 F. Supp. 703, 725 (E.D. Tex. 1981), and are to be used "only and strictly as Congress has prescribed." *Nixon v. Richey*, 513 F.2d 430, 446 (D.C. Cir. 1975) (per curiam). Defendants' convoluted interpretation of Section 2284(a) cannot withstand these clear instructions.

Defendants' motion contends with none of these issues. Instead, all they offer are vague notions of federalism. *See* Mot. 7–9. To be sure, challenges to state

---

[3] *Sands* is binding on this Court. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

legislative plans invoke federalism concerns. But so do challenges to congressional plans. *See* U.S. Const. art. I, § 4 (conferring upon states initial responsibility for determining time, place, and manner of congressional elections, which includes drawing districts). And yet Congress unquestionably limited Section 2284(a) only to congressional litigation presenting constitutional claims. While Defendants surmise that it might have been consistent with federalism concerns for Congress to apply Section 2284(a) to statutory litigation over state legislative plans given that such cases involve the ordering of state governmental affairs, *see* Mot. 7, "there was no practice of statutory challenges to state legislative apportionment that Congress needed to address in 1976." *Thomas*, 961 F.3d at 809 (Costa, J., concurring). Accordingly, "Congress would not have used an extra 'the' to distinguish between constitutional and statutory apportionment challenges when the latter kind of action was not even on its radar screen." *Id.* (Costa, J., concurring).[4]

---

[4] Judge Costa's plurality concurrence includes a helpful summation of the numerous logical leaps that Defendants' interpretation of Section 2284(a) would require:

> To sum up, [Defendants] would give this much weight to the "the" that comes before "reapportionment of any statewide legislative body": Insertion of that article would require three-judge panels for exclusively statutory claims—followed by direct appeal to the Supreme Court— when the three-judge regime Congress was paring down in 1976 never did. It would require those three-judge panels only for statutory challenges to apportionment of state legislative seats, not congressional

In sum, because Defendants' theory cannot be squared with either the ordinary meaning of Section 2284(a) or what Congress was intending to do when it enacted that provision, it should be rejected. And because Plaintiffs have not asserted a constitutional challenge to Georgia's new legislative maps, a three-judge court is neither required nor permitted.

## II.  Section 2 confers a private right of action.

Controlling precedent forecloses Defendants' argument that Section 2 does not confer a private right of action. In *Morse v. Republican Party of Virginia*, a majority of the U.S. Supreme Court agreed that "the existence of the private right of action under Section 2 . . . has been clearly intended by Congress since 1965." 517 U.S. 186, 232 (1996) (Stevens, J.) (plurality opinion on behalf of two justices) (quoting S. Rep. No. 97-417, pt. 1, at 30 (1982)); *accord id.* at 240 (Breyer, J., concurring) (expressly agreeing with Justice Stevens on this point on behalf of three justices); *see also Ga. State Conf. of NAACP v. Georgia*, 269 F. Supp. 3d 1266, 1275

---

ones. And it would do all this to address statutory challenges to apportionment of state legislatures when those claims hardly existed in 1976. An elephant indeed.

*Thomas*, 961 F.3d at 809 (Costa, J., concurring) (citation omitted).

(N.D. Ga. 2017) (three-judge court) (citing *Morse* and concluding that "Section 2 contains an implied private right of action").[5]

Defendants do not acknowledge *Morse*, let alone engage with it. Instead, they rely on a method for assessing the existence of implied rights of action that the Supreme Court later adopted in *Alexander v. Sandoval*, 532 U.S. 275 (2001). *See* Mot. 13–14. But where "a precedent of [the Supreme] Court has direct application in a case," courts "should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions"—even if it "appears to rest on reasons rejected in some other line of decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989). *Morse* has not been overruled. Indeed, the Supreme Court has given no indication that a majority of justices intends to revisit *Morse*'s conclusion; the Court has repeatedly heard private cases brought under Section 2 in the two decades since *Sandoval* without questioning

---

[5] The *Morse* Court reached this conclusion as an essential part of its rationale for holding that another provision of the Voting Rights Act, Section 10, confers a private right of action. The controlling opinion explained that "[i]t would be anomalous, to say the least, to hold that both § 2 and § 5 are enforceable by private action but § 10 is not, when all lack the same express authorizing language." *Morse*, 517 U.S. at 232 (Stevens, J.); *see also id.* at 240 (Breyer, J., concurring) (agreeing that rationale behind "private right of action to enforce § 5 . . . applies with similar force not only to § 2 but also to § 10"). "When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which [courts] are bound." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996).

this predicate foundation. *See, e.g.*, *Abbott v. Perez*, 138 S. Ct. 2305, 2331–32 (2018); *LULAC v. Perry*, 548 U.S. 399, 409 (2006) (plurality op.); *see also Shelby County v. Holder*, 570 U.S. 529, 537 (2013) ("Both the Federal Government *and individuals* have sued to enforce § 2." (emphasis added)). And only Justice Thomas joined Justice Gorsuch's recent suggestion that whether or not Section 2 furnishes a private right of action is "an open question," *Brnovich v. DNC*, 141 S. Ct. 2321, 2350 (2021) (Gorsuch, J., concurring)—a concurrence that did not cite *Morse* or any post-*Morse* Section 2 cases.

Ultimately, Defendants cite no caselaw rejecting a private right of action under Section 2. When the issue has been addressed, courts—including this Court—have unanimously confirmed that a private right of action exists. *See, e.g.*, *Mixon v. Ohio*, 193 F.3d 389, 406 (6th Cir. 1999) ("An individual may bring a private cause of action under Section 2 of the Voting Rights Act . . . ."); *Ga. State Conf. of NAACP*, 269 F. Supp. 3d at 1275. As a three-judge court recently explained when confronted with this argument, "[a]bsent contrary direction from a higher court, we decline to break new ground on this particular issue." *LULAC v. Abbott*, No. EP-21-

CV-00259-DCG-JES-JVB, 2021 WL 5762035, at *1 (W.D. Tex. Dec. 3, 2021) (three-judge court). This Court should similarly decline to break new ground.[6]

Even setting aside *Morse* and subsequent Section 2 cases, there can be no doubt that the statute does indeed convey a private right of action. The text of the Voting Rights Act confirms this conclusion. Section 3 authorizes certain remedies "[w]henever the Attorney General *or an aggrieved person* institutes a proceeding under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. § 10302(a) (emphasis added); *see also id.* § 10302(b) (similar). Since "[S]ection 2 is a constitutional exercise of congressional enforcement power under the Fourteenth and Fifteenth Amendments," *United States v. Marengo Cnty. Comm'n*, 731 F.2d 1546, 1550 (11th Cir. 1984), it follows that "Congress must have intended it to provide private remedies." *Morse*, 517 U.S. at 234 (Stevens, J.). Similarly, Section 14 authorizes attorneys' fees for "the prevailing party, *other than the United States,*" in "any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment," 52 U.S.C. § 10310(e)

---

[6] While the judgment was ultimately vacated on mootness grounds, the Eleventh Circuit also recently rejected the argument that Section 2 lacks a private right of action. *See Ala. State Conf. of NAACP v. Alabama*, 949 F.3d 647, 651–54 (11th Cir. 2020) ("The [Voting Rights Act], as amended, clearly expresses an intent to allow private parties to sue the States."), *vacated*, 141 S. Ct. 2618 (2021).

(emphasis added)—an authorization that assumes private parties may sue under statutes enforcing such guarantees, including Section 2.

If there were any doubt left as to whether Congress intended to allow private suits under Section 2, then the legislative history resolves it. The authoritative Senate report that accompanied the Voting Rights Act's 1982 amendments "reiterate[d] the existence of the private right of action under section 2, as ha[d] been clearly intended by Congress since 1965." S. Rep. No. 97-417, pt. 1, at 30; *accord* H.R. Rep. No. 97-227, pt. 1, at 32 (1981) ("It is intended that citizens have a private cause of action to enforce their rights under Section 2."). Defendants' argument that Section 2 confers no private right of action flies in the face of not only this unambiguous legislative history, but also more than 50 years of privately enforced Section 2 litigation. *See, e.g.*, *Hous. Lawyers' Ass'n v. Att'y Gen.*, 501 U.S. 419, 421–22 (1991); *Thornburg v. Gingles*, 478 U.S. 30, 34–35 (1986); *see also* Statement of Interest of the United States at 1, *LULAC v. Abbott*, No. 3:21-cv-259 (DCG-JES-JVB) (W.D. Tex. Nov. 30, 2021), ECF No. 46 ("Longstanding case law, the structure of the Voting Rights Act, the Act's broad enforcement provisions, and authoritative sources of Congressional intent confirm that there is a private cause of action under Section 2."). The Court should reject Defendants' baseless argument—just like every other court that has addressed this issue.

### III. Immediate appeal of the Court's ruling is not appropriate.

Finally, Defendants urge the Court to immediately certify for appeal an unfavorable ruling on their motion. *See* Mot. 15–16. The Court should decline the invitation.

28 U.S.C. § 1292(b) allows a district court to certify an issue for immediate appeal "[w]hen [the] district judge . . . shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." But here, no substantial ground for difference of opinion exists as to whether this Court has jurisdiction to proceed as a single-judge court or whether a private right of action exists under Section 2. On the contrary, Defendants cannot point to a *single* case that has adopted their position on either issue. This is a case where resolution of the controlling questions are "so clear that the 'substantial ground for difference of opinion' requirement could not be met." *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004).

As discussed above, *see supra* Section I, the plain text of Section 2284(a) and its legislative history demonstrate that far from *requiring* three-judge courts to hear purely statutory challenges to state legislative maps, the statute actually *forbids* it. Nor does a substantial ground for difference of opinion exist as to Defendants'

Section 2 argument. As discussed above, *see supra* Section II, no court has adopted Defendants' position in more than five decades of Voting Rights Act litigation. This result is unsurprising given that a majority of the U.S. Supreme Court agreed that "the existence of the private right of action under Section 2 . . . has been clearly intended by Congress since 1965." *Morse*, 517 U.S. at 232 (Stevens, J.) (quoting S. Rep. No. 97-417, pt. 1, at 30); *see also McFarlin*, 381 F.3d at 1258 (noting that "a question of law as to which [reviewing court is] in 'complete and unequivocal' agreement with the district court is not a proper one for § 1292(b) review" (quoting *Burrell v. Bd. of Trs.*, 970 F.2d 785, 789 (11th Cir. 1992))). Although Defendants characterize these issues as "novel[]," Mot. 16, this could not be further from the truth: courts have addressed both issues, and rejected Defendants' positions, for decades.

Ultimately, Defendants' groundless request for an interlocutory appeal is simply another delaying tactic to evade judicial review of Georgia's new, unlawful state legislative maps in advance of the 2022 midterm elections. Rather than shorten this litigation, certifying an appeal would unnecessarily delay its resolution—and consequently prejudice not only Plaintiffs, but all Georgia voters who are entitled to elect their representatives to the General Assembly from districts that comply with federal law. The Court should not allow Defendants to evade their obligations under

Section 2 based on two baseless, consistently rejected legal arguments. Their request

for an interlocutory appeal should therefore be denied along with their motion.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court deny Defendants'

motion to dismiss.

Dated: January 18, 2022

By: **Adam M. Sparks**
Joyce Gist Lewis
Georgia Bar No. 296261
Adam M. Sparks
Georgia Bar No. 341578
**KREVOLIN & HORST, LLC**
One Atlantic Center
1201 West Peachtree Street, NW,
Suite 3250
Atlanta, Georgia 30309
Telephone: (404) 888-9700
Facsimile: (404) 888-9577
Email: JLewis@khlawfirm.com
Email: Sparks@khlawfirm.com

Kevin J. Hamilton*
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: (206) 359-8000
Facsimile: (206) 359-9000
Email: KHamilton@perkinscoie.com

Respectfully submitted,

Abha Khanna*
Jonathan P. Hawley*
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, Washington 98101
Phone: (206) 656-0177
Facsimile: (206) 656-0180
Email: AKhanna@elias.law
Email: JHawley@elias.law

Daniel C. Osher*
Christina A. Ford*
Graham W. White*
Michael B. Jones
Georgia Bar No. 721264
**ELIAS LAW GROUP LLP**
10 G Street NE, Suite 600
Washington, D.C. 20002
Phone: (202) 968-4490
Facsimile: (202) 968-4498
Email: DOsher@elias.law
Email: CFord@elias.law
Email: GWhite@elias.law
Email: MJones@elias.law

*Counsel for Plaintiffs*

*Pro hac vice* application pending

21

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS has been prepared in accordance with the font type and margin requirements of LR 5.1, NDGa, using font type of Times New Roman and a point size of 14.

Dated: January 18, 2022

**Adam M. Sparks**
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I have on this date caused to be electronically filed a copy of the foregoing PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to counsel of record.

Dated: January 18, 2022

**Adam M. Sparks**
*Counsel for Plaintiffs*