# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

ANNIE LOIS GRANT, *et al.*,

   *Plaintiffs,*

v.

BRAD RAFFENSPERGER, *et al.*,

   *Defendants.*

CIVIL ACTION

FILE NO. 1:22-CV-00122-SCJ

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

## INTRODUCTION

Defendants have stated from their first filing in the cases involving the 2021 redistricting plans that, apart from any jurisdictional questions, it is too late to afford Plaintiffs any relief for the 2022 elections. *See, e.g.*, Alpha Phi Alpha Status Report, Doc. 29. In their motion to dismiss, Defendants raise significant questions about this Court's jurisdiction that are not nearly as clear as Plaintiffs want them to be—not for a "gambit" on timing but to avoid the significant drain on judicial resources if Defendants are correct.

Further, Plaintiffs' response illustrates why the jurisdictional questions raised by Defendants are so significant. Plaintiffs rely on the unique nature of the Voting Rights Act (VRA) and a broad provision about actions enforcing "the voting guarantees of the fourteenth and fifteenth amendments" to the Constitution, 52 U.S.C. § 10302(a), as a sword to argue there is a private right of action under Section 2 of the VRA. But at the same time, Plaintiffs argue that their claims are not constitutional challenges as a shield to limit the three-judge panel statute to non-VRA challenges to districts. *Compare* [Doc. 24, pp. 6-7] *with* [Doc. 24, p. 18]. Both cannot be true.

While Plaintiffs can point to decisions from other Circuits and nonbinding *dicta* in support of their position, none of their arguments demonstrate that the positions they take are settled law. Further, because it

1

is already too late to order any relief for the 2022 elections, *see* [Doc. 25], there is more than enough time to obtain binding direction from the Eleventh Circuit before proceeding with this case.

## ARGUMENT AND CITATION OF AUTHORITY

**I.     Plaintiffs' arguments that § 2284(a) is limited to constitutional challenges is unavailing.**

The most plausible reading of § 2284(a) is one that requires *any* federal-court challenge to state legislative apportionments be heard before a three-judge court. And the unique nature of the VRA, which Plaintiffs espouse in their response, underscores that VRA challenges to districts are also constitutional in nature.

**A.     Plaintiffs' insistence that there is no "determiner" in § 2284(a) is misguided.**

Plaintiffs argue in their Response, [Doc. 24], that the word "the" in § 2284(a), which Defendants characterize as a determiner which eliminates the carryover of the prepositive modifier, "constitutionality," is just an effort by the statute's drafters to create an uninterrupted parallel structure and that any other interpretation is hiding an elephant in a mousehole. But this would be a strange path for the drafters to trod because the chosen structure muddies the interpretative waters rather than clarifies them. Indeed, it is by adding "the" after "or" in § 2284(a) that the statute became an interpretive challenge.

Courts must assume the drafters were aware of interpretative conventions like the series-qualifier canon when selecting the precise language of a statute. "[I]n the realm of public lawmaking, when judges are grappling with enacted texts, linguistic canons apply commonsensical rules of syntax to help us decode the meaning of language." *Thomas v. Reeves,* 961 F. 3d 800, 815 (5th Cir. 2020) (Willett, J., concurring). And "the linguistic canons are not 'special, lawyers-only grammar rules.' [They] are traditional tools of interpretation routinely applied by both the Supreme Court and by [lower] court[s]." *Id.* at 814 n. 23; *see also United States v. Gumbs*, 964 F.3d 1340, 1347 (11th Cir. 2020) (applying series-modifier canon when no determiner present).

The series-qualifier canon readily admits the exception of a determiner, often in the form of the word "the," to interrupt carryover of prepositive modifiers. ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 148 (2012). Thus, § 2284(a) cannot be said to be, as Plaintiffs claim, "repeat words without intending to signal meaning." To the contrary, "§ 2284(a) is hardly intuitive." *Thomas,* 961 F. 3d at 814 (Willett, J., concurring). But as Defendants outline in their principal brief, the canons of interpretation, particularly the series-qualifier canon, provide clarity where Congress left it wanting.

Moreover, § 2284(a) is not nearly as parallel as Plaintiffs suggest. [Doc. 24, pp. 10-11]. In order to more clearly communicate the carryover of the prepositive modifier throughout the entire series while also preserving parallel structure, Congress could simply have repeated the "of" following "constitutionality" following the "or" in the series, as follows:

| "A district court of three judges shall be convened | | |
|---|---|---|
| | "*when* otherwise required by Act of Congress, or | |
| | "*when* an action is filed challenging the constitutionality | |
| | | (a) "*of the apportionment of* congressional districts or" |
| | | (b) *of the apportionment of* any statewide legislative body |

Instead, Congress opted for a different structure, creating the interpretive question now before the Court. And the insertion of "the" in the second part of the list ought not to be viewed as a mere stylistic choice by the drafters, as Plaintiffs suggest. Thus, applying the relevant canons, the best interpretive structure for § 2284 is:

4

| "A district court of three judges shall be convened | | |
|---|---|---|
| | "*when* otherwise required by Act of Congress, or | |
| | "*when* an action is filed challenging | |
| | | (a) *the* constitutionality of the apportionment of congressional districts or |
| | | (b) *the* apportionment of any statewide legislative body. |

### B. Plaintiffs mistake an absence of precedent directly on point for authority.

Plaintiffs inaccurately claim that courts have uniformly rejected Defendants' position on § 2284(a). But that characterization does not follow from the case law because until only recently, "[n]o defendant has ever pressed" the issue. *Thomas,* 961 F. 3d at 823 (Willett, J., concurring). And in the one case where the issue was squarely addressed, the result was a divided *en banc* court. *Compare, Thomas v. Reeves,* 961 F. 3d 800 (5th Cir. 2020) (en banc) (per curiam) (Costa, J., concurring) *with id.* at 810 – 27 (Willett, J., concurring).

In support of their position that § 2284(a) is settled law, Plaintiffs pull largely from cases that paid cursory or no attention at all to the question before this Court. *Rural W. Tenn. African-Am. Affs. Council v. Sundquist,* for

5

example, simply *noted* that the three-judge court disbanded when the constitutional claims were mooted. 209 F. 3d 835, 838 (6th Cir. 2020).[1] It had nothing to say about the propriety of the disbanding, and no party to that action apparently pressed the issue. The same goes for *Bone Shirt v. Hazeltine*, 336 F. Supp. 2d 976, 980 (D. S.D. 2004), which notes a three-judge court disbanded, and *Old Person v. Brown*, 182 F. Supp. 2d 1002, 1003 (D. Mont. 2002), which is silent on the issue. Similarly, *Chestnut v. Merrill* involved a statutory challenge to congressional districts, not state legislative districts. 356 F. Supp. 3d 1351 (N.D. Ala. 2019).

"One reason for the dearth of precedent [on point is that] section 2 'results cases' are rarely pursued, at least until recently, without accompanying constitutional claims…" *Thomas,* 961 F. 3d. at 823, n. 85 (Willett, J. concurring). And "[a]ny newness to the State's § 2284(a) argument reflects the newness of post-*Shelby County* litigation strategy." *Id.* at 826. But "[t]oday's question, fundamentally is about jurisdiction—the very power of federal courts. And 'past practice does not, by itself, create power.'" *Id.* (quoting *Medellin v. Texas,* 552 U.S. 491, 532 (2008)). And crucial for this Court to

---

[1] That case also apparently involved only one legislative district and not the statewide apportionment of legislative districts. *Sundquist*, 209 F. 3d at 839 (noting difference was one district that was majority-Black).

6

consider: "a long-established practice does not justify a rule that denies statutory text its fairest reading." *Armstrong v Exceptional Child Ctr., Inc.*, 575 U.S. 320, 329 (2018). The courts have a duty primarily "to legislative text, not to litigation habits that, until now, have gone merrily along, unexamined." *Thomas,* 961 F.3d at 823 (Willett, J., concurring).

    **C.    Statutory history plainly supports the Defendants' reading of § 2284(a).**

While Plaintiffs discuss the history of the three-judge panel position, they largely ignore the historical record cited by Defendants that shows broad support for the proposition that § 2284(a) applies to statutory challenges to state legislative apportionment cases. They instead claim that Congress was "*limiting* the three-judge requirement" and thus could not have expanded it. [Doc. 24, p. 12] (emphasis in original). Putting aside that this directly contradicts the text chosen by Congress, when determining the ultimate scope of a statute, courts must focus on the "broad language that Congress adopted, not on the ripple effects, however unforeseen, that flow[] from it…" *Thomas,* 961 F. 3d at 824 (Willett, J., concurring) (citing *Bostock v. Clayton Cty.,* 140 S. Ct. 1731 (2020) (internal quotations omitted)). Plaintiffs' argument reflects their preference to rewrite the statute, not to properly interpret it.

7

This Court should dismiss this case for failure to seek a three-judge court, or at the very least, refer it to the Chief Judge of the Eleventh Circuit for such appointment.

## II. Plaintiffs' attempt to create a private right of action in Section 2 falls short.

Plaintiffs begin with a stunning statement that "[c]ontrolling precedent" applies to the question of a private right of action, citing a case from more than 25 years ago, apparently concluding that they know more about binding precedent than two Supreme Court Justices who conclude the question remains "open." *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2350 (2021) (Gorsuch, J., concurring). But Plaintiffs' attempt to show this is a closed question does not withstand scrutiny.

First, Plaintiffs dramatically overread *Morse v. Republican Party of Va.*, 517 U.S. 186, 232 (1996) in in arguing that it is binding here.[2] That case involved two questions: "whether [Section] 5 of the [Voting Rights] Act required preclearance of the [Virginia Republican] Party's decision to exact the fee and

---

[2] Indeed, contra Plaintiffs' position, the United States apparently did not rely on *Morse* when opposing an effort to dismiss a Section 2 case in Texas on a similar ground here, instead relying on the history of private litigants bringing such cases. *See League of United Latin Am. Citizens v. Abbott*, No. EP-21-CV-00259-DCG-JES-JVB, 2021 U.S. Dist. LEXIS 231524, at *5 (W.D. Tex. Dec. 3, 2021) (noting position of United States and not citing *Morse*).

8

whether appellants were permitted to challenge it as a poll tax prohibited by [Section] 10." *Id.* at 190. Justice Stevens, writing for himself and Justice Ginsburg, explained that the Virginia Republican Party was acting under state law, and thus any changes to the nomination process had to be precleared under Section 5. *Id.* at 210, 219. Justice Stevens' opinion, joined in a concurrence by Justices Breyer, O'Connor, and Souter on the second question, also concluded that Section 10 of the VRA included a private right of action. *Id.* at 231-232. But the language is not as clear as Plaintiffs would like—the necessary part of the holding was the reliance on *Allen v. State Bd. of Elections*, 393 U.S. 544 (1969), which was also an enforcement action under *Section 5*, and not a case finding a private right of action under *Section 2*. While Justice Stevens certainly used some language about Section 2, it is quite a stretch to say that language was *necessary* to the holding about Section 10—in context, the most one can say is that Justice Stevens just "assumed—without deciding—that the Voting Rights Act of 1965 furnishes an implied cause of action under [Section] 2." *Brnovich*, 141 S. Ct. at 2350 (Gorsuch, J., concurring).

Second, *Morse* based its holding about private rights of actions on the proposition that "[s]ince § 10 is, by its terms, a statute designed for enforcement of the guarantees of the Fourteenth and Fifteenth Amendments,

9

*see* 42 U.S.C. § 1973h(b) (1988 ed.), Congress must have intended it to provide private remedies." 517 U.S. at 233-234. Applying that logic to Plaintiffs' views on the three-judge court issue would mean that, if Section 2 provides a private right of action, then it must be an action to enforce "the guarantees of the Fourteenth and Fifteenth Amendments." *Id*. This position reinforces Defendants' argument that challenges under the VRA are challenges to the "constitutionality" of district maps—either the VRA is enforcing the Constitution or it is not. *U.S. v. Marengo Cty. Comm'n*, 731 F. 2d 1546, 1550 (11th Cir. 1984). Plaintiffs cannot have it both ways.

Third, as Justice Thomas noted, joined by three colleagues in a dissent as to whether a private right of action exists under Section 10 of the VRA, "Section 3 does not, however, identify any of the provisions under which private plaintiffs may sue. The most logical deduction from the inclusion of 'aggrieved person' in § 1973a is that Congress meant to address those cases brought pursuant to the private right of action that this Court had recognized as of 1975, *i.e.*, suits under § 5, as well as any rights of action that we might recognize in the future." *Id*. at 289. No one disputes that the Supreme Court has never decided that question in a case involving Section 2 itself.

Fourth, Plaintiffs also cite the vacated opinion in *Ala. State Conference of the NAACP v. Alabama*, 949 F.3d 647 (11th Cir. 2020) but completely ignore

10

Judge Branch's dissent laying out her view that "Section 2 contains no express authorization enabling individuals to maintain such an action in federal court against a State. Section 2 does not 'refer to the "State" in a context that makes it clear that the State is the defendant to the suit brought by' private plaintiffs in federal court." *Id*. at 658. While Judge Branch was focused on the abrogation of sovereign immunity, the same logic applies to the lack of an any basis in the "statute's language" for a right of action. *In re Wild*, 994 F.3d 1244, 1255 (11th Cir. 2021) (en banc). And *Ga. State Conference of the NAACP v. Georgia*, 269 F. Supp. 3d 1266, 1275 (N.D. Ga. 2017) was focused on this question of sovereign immunity and *assumed* a private right of action as part of that analysis.

Fifth, if Plaintiffs are correct that a private right of action exists as to every section of the Voting Rights Act, [Doc. 47, p. 25], it remains strange that the Supreme Court would devote as much time and effort to determining if such a right exists for the various sections of the Act. It also would render other sections of the Voting Rights Act that confer such power only on the Attorney General to be superfluous, because any Plaintiffs propose reading the "any aggrieved person" language into every part of the VRA. *See, e.g.*, 52 U.S.C. § 10101(c) (authorizing only the Attorney General to bring an action under paragraphs (a) and (b)). The Eleventh Circuit, when deciding a lawsuit under

11

brought under the Help America Vote Act did not consider or rely on Section 3 of the VRA to find the action one that enforces "the voting guarantees of the fourteenth and fifteenth amendment" when it found HAVA created no private right of action. *Bellitto v. Snipes*, 935 F. 3d 1192, 1202-03 (11th Cir. 2019).

Finally, Plaintiffs do not—and cannot—point to any "'rights-creating' language" in Section 2. *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001). Their attempt to read Section 3 into an authorization for a private right of action to enforce every part of the VRA strains the text of that section and reinforces Defendants' argument that the VRA enforces constitutional provisions—thus making any challenge under the VRA also a challenge to "constitutionality" for purposes of § 2284. Relying on Congress's intent does not save the clear language of a statute, despite Plaintiffs' efforts to circumvent the lack of any clear and affirmatively manifested "intent—as reflected in the Act's text and structure—to create a private right of action." *In re Wild*. 994 F. 3d at 1256.

### III. The lack of binding precedent counsels in favor of resolution by the Eleventh Circuit.

As discussed above, the questions of law on this Court's jurisdiction are controlling questions of law. *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004). If the claims must be heard by a three-judge court, then this Court lacks jurisdiction as a single-judge court. *Shapiro v. McManus*, 577

U.S. 39, 44 (2015). Referring these questions now will avoid a waste of judicial resources if a three-judge court is required. *McFarlin*, 381 F.3d at 1259.

## CONCLUSION

Plaintiffs have not shown that there is any binding precedent on either side of the questions before the Court. This Court should grant the motion to dismiss or refer the issue to a three-judge court.

This 20th day of January, 2022.

        Respectfully submitted,

        Christopher M. Carr
        Attorney General
        Georgia Bar No. 112505
        Bryan K. Webb
        Deputy Attorney General
        Georgia Bar No. 743580
        Russell D. Willard
        Senior Assistant Attorney General
        Georgia Bar No. 760280
        Charlene McGowan
        Assistant Attorney General
        Georgia Bar No. 697316
        **State Law Department**
        40 Capitol Square, S.W.
        Atlanta, Georgia 30334

        */s/ Bryan P. Tyson*
        Bryan P. Tyson
        Special Assistant Attorney General
        Georgia Bar No. 515411
        btyson@taylorenglish.com
        Frank B. Strickland

Georgia Bar No. 678600
fstrickland@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202
lparadise@taylorenglish.com
**Taylor English Duma LLP**
1600 Parkwood Circle
Suite 200
Atlanta, Georgia 30339
(678) 336-7249

*Counsel for Defendants*

14

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(D), the undersigned certifies that the foregoing Response Brief has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/ Bryan P. Tyson*
Bryan P. Tyson