IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ALPHA PHI ALPHA FRATERNITY INC., *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>BRAD RAFFENSPERGER,<br><br>*Defendant*. | CIVIL ACTION<br><br>FILE NO. 1:21-CV-05337-SCJ |
| COAKLEY PENDERGRASS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>BRAD RAFFENSPERGER, *et al.*,<br><br>*Defendants*. | CIVIL ACTION<br><br>FILE NO. 1:21-CV-05339-SCJ |
| ANNIE LOIS GRANT, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>BRAD RAFFENSPERGER, *et al.*,<br><br>*Defendants*. | CIVIL ACTION<br><br>FILE NO. 1:22-CV-00122-SCJ |

**DECLARATION OF LYNN BAILEY**

Pursuant to 28 U.S.C. § 1746 and F.R.E. 702 and 703, I, LYNN BAILEY, make the following declaration:

1.

My name is Lynn Bailey. I am over the age of 21 years, and I am under no legal disability which would prevent me from giving this declaration. If called to testify, I would testify under oath to these facts.

2.

I am retired after serving as the Executive Director of the Richmond County Board of Elections from 1993 to 2021, and in that position, I oversaw administrative duties and worked to fulfill the policies and directives of the Richmond County Board of Elections. I currently work as a part-time consultant to the Board of Elections and a part-time consultant with the Georgia Secretary of State's office.

3.

I have extensive knowledge and experience about Georgia's election system. I have participated in organizations of Georgia election officials, conducted trainings for other election officials, and chaired committees. I was appointed to the U.S. Election Assistance Commission Standards Board by Secretary of State Cathy Cox in 2003 and served in that capacity for 16 years. I have served on various other

committees and working groups charged with evaluating voting equipment, general voting and registration processes and procedures, and facilitating voting for US citizens and active duty military residing overseas under the Uniformed Overseas Citizens Absentee Voting Act.

4.

When I was director, the Board of Elections had a professional staff, which ranged in size between nine fulltime employees and a number of temporary employees, as needed. It oversees the equipment needs for Richmond County's 68 voting precincts; recruiting and hiring poll managers, assistant poll managers, and poll workers for every election; arranging for the State's Ballot-Marking Devices (BMDs) for all precincts to include training all poll officials, testing equipment, securing transportation of equipment to and from the polling locations; supervising all aspects of Advance in Person voting at multiple locations; supervising all aspects of absentee by mail ballots; and supervising all aspects of the November General Election and the January General Election Runoff.

5.

When I was Elections Director, I oversaw the reallocation of voters and administrative process for two complete redistricting cycles and a portion of the current cycle.

6.

In preparing this declaration, I relied on Georgia law, my knowledge of Georgia election administration, and my decades of experience operating elections in Georgia.

7.

I was asked to opine on the current state of the election calendar and the impact of moving any dates currently set for the 2022 elections.

8.

The election calendar in a year following redistricting is tight to say the least compounded even more so this year by various delays caused by the pandemic. Because data was late arriving and qualifying and the date of the general primary are earlier than has been the case in any other election year following the release of Census data, in my opinion, any movement of dates in the current calendar risks potentially catastrophic results for voters and election officials and at the very least significant opportunity for unintentional errors because of the lack of time to properly conduct quality control checks on various election processes.

9.

When new maps are distributed to counties, election officials must first manually review both State and local maps to determine where changes have

occurred and evaluate how those changes will effect their street segments. Following the review, staff must touch every street segment in the state's voter-registration system, Election Net, to update the district information for each segment of a street. There is no automatic process to complete this task—it must be done manually. Counties have already begun this process for federal and state lines and are eagerly anticipating arrival of local district lines.

10.

Richmond County has around 130,000 registered voters and more than 5,000 street segments. Following a redistricting cycle, I would task 3-4 registrars full time to conduct updates of district numbers. That task, including quality control audits after manual data entry, would take 3-4 weeks.

11.

Not every county has the resources that Richmond County has, including an in-house GIS department to help with error checking after doing the required data entry.

12.

The current deadlines are set working backwards from the election. The Secretary set a February 18 deadline for all street segments to be updated so that the Center for Election Services can begin building the basic structure of ballots.

Qualifying begins on March 7 and runs through March 11. Following the close of qualifying, counties will immediately transmit the names of qualified candidates to the Center for Election Services to add to the ballot layout.

13.

Other deadlines also apply. For example, February 23 is the deadline for calling special elections in conjunction with the May primary, because it is 90 days out. Elections called for the May primary are called for a particular day, so any movement in the primary would require re-notifying voters of the change in the date for any associated special election.

14.

February 23 is also the deadline for election officials to set polling places located outside of a precinct. They have to notify voters of any changes in precincts and polling locations well in advance of the election to avoid voter confusion.

15.

After qualifying concludes on March 11, the Center for Election Services sends ballot proofs to all counties. County officials carefully check the ballots for errors in spelling and proper district assignments. Primary ballots involve three times the number of ballots as regular elections because each partisan ballot must be proofed separately.

5

16.

After careful review, the ballot proofs are sent back to the Center for Election Services so that the changes can be made and final databases and ballots provided by the deadline for sending out ballots for overseas and military voters on April 5, 2022.

17.

While all of that is going on, election officials are continuing to finish any changes to precinct boundaries and polling locations, securing any additional sites for early voting, organizing and packing multitudes of supplies, and recruiting poll workers. In addition, the regular conference for Georgia election officials is currently set for March 21-23, 2022 and it is a critical source of education for election officials.

18.

If any of these dates are changed without also moving the election date, it places the proper administration of the election at serious risk. At the very least, election officials will not have time to do the quality control checks that ensure our voter-registration lists are accurate.

19.

Moving the May 24 election date would result in massive upheaval for election officials and voters. Election officials have contracts with churches and other locations for a particular day. Early voting sites are likely used for other events surrounding the dates for early voting. Readjusting the calendar to accommodate a different three week period would cause disorder in the scheduling and voters would need to be notified of any such changes. Additionally, the state's new voting machines require significantly more power than the older units, which places limitations on the locations that are suitable for use as polling locations.

20.

Unlike 2020, when every facility was available when elections were delayed, imposing new maps and moving the election would wreak massive difficulties on election officials and voters. In short, moving the May 24 date because new maps were imposed would result in massive additional work for election officials during a time when they would already be struggling to timely manually input district information and carefully and deliberately auditing that data input.

21.

The March qualifying dates cannot be delayed to allow for new plans without risking the May 24 election date. Asking election officials to simultaneously input

new districts while also conducting the other tasks related to elections would not only duplicate work already done, but also reduce the opportunity for checking for errors. Moving the May 24 election date would cause upheaval for election officials and voters.

22.

Election officials have planned 2022 based on the dates set well in advance. Modifying those dates now will not help election officials or voters in the administration of the 2022 elections.

[Signature on next page]

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 4th day of February, 2022.

*Lynn Bailey*
LYNN BAILEY