# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ALPHA PHI ALPHA FRATERNITY INC. et al.,<br><br>   Plaintiffs,<br><br>  v.<br><br>BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia,<br><br>   Defendant. | CIVIL ACTION FILE NO. 1:21-CV-5337-SCJ |
| COAKLEY PENDERGRASS et al.,<br><br>   Plaintiffs,<br><br>  v.<br><br>BRAD RAFFENSPERGER, in his official capacity as the Georgia Secretary of State, et al.,<br><br>   Defendants. | CIVIL ACTION FILE NO. 1:21-CV-5339-SCJ |
| ANNIE LOIS GRANT et al.,<br><br>   Plaintiffs,<br><br>  v.<br><br>BRAD RAFFENSPERGER, in his official capacity as the Georgia Secretary of State, et al.,<br><br>   Defendants. | CIVIL ACTION FILE NO. 1:22-CV-122-SCJ |

## <u>STIPULATION AND ORDER REGARDING DISCOVERY</u>

Pursuant to <u>Federal Rule of Civil Procedure 26(f)</u>, the undersigned Parties have entered into this Stipulation and Order to reduce the time, expense, and other burdens of discovery of documents, things, and electronically stored information ("ESI"), and to govern discovery obligations in this action.[1]

## I.     GENERAL PROVISIONS

1.     The Parties, as well as their officers, directors, employees, and agents, are referred to as the "Parties" solely for purposes of this stipulation.

2.     "Plaintiff" or "Plaintiffs" as used herein shall mean the following:

a.     The plaintiffs in *Alpha Phi Alpha Fraternity Inc. v. Raffensperger*, No. 1:21-CV-5337-SCJ (N.D. Ga.): Alpha Phi Alpha Fraternity Inc., Sixth District of the African Methodist Episcopal Church, Eric T. Woods, Katie Bailey Glenn, Phil Brown, and Janice Stewart (the "*Alpha Phi Alpha* Plaintiffs");

b.     The plaintiffs in *Pendergrass v. Raffensperger*, No. 1:21-CV-53390SCJ (N.D. Ga.): Coakley Pendergrass, Triana Arnold

---

[1] In the interest of judicial economy, the parties submit a joint ESI protocol in each of the three above-captioned cases. The submission of a single protocol does not imply or reflect any intention to request consolidation of these cases under <u>Federal Rule of Civil Procedure 42</u> or otherwise.

James, Elliott Hennington, Robert Richards, Jens Rueckert, and

Ojuan Glaze (the "*Pendergrass* Plaintiffs"); and

c.     The plaintiffs in *Grant v. Raffensperger*, No. 1:22-CV-122-SCJ

(N.D. Ga.): Annie Lois Grant, Quentin T. Howell, Elroy Tolbert,

Theron Brown, Triana Arnold James, Eunice Sykes, Elbert

Solomon, Dexter Wimbish, Garrett Reynolds, Jacqueline Faye

Arbuthnot, Jacquelyn Bush, and Mary Nell Conner (the "*Grant*

Plaintiffs").

3.     "Defendant" or "Defendants" as used herein shall mean Brad

Raffensperger, in his official capacity as the Georgia Secretary of State; William S.

Duffey, Jr., in his official capacity as chair of the State Election Board;[2] Matthew

Mashburn, in his official capacity as a member of the State Election Board; Sara

Tindall Ghazal, in her official capacity as a member of the State Election Board;

Edward Lindsey, in his official capacity as a member of the State Election Board;

and Janice W. Johnston, in her official capacity as a member of the State Election

Board.

---

[2] Pursuant to Federal Rule of Civil Procedure 25(d), the *Pendergrass* Plaintiffs and the *Grant* Plaintiffs have automatically substituted William S. Duffey, Jr., in his official capacity, based on changes to the composition of the State Election Board.

3

## II.   PRESERVATION AND PRODUCTION OF DOCUMENTS

### A.   Preservation

1.   The Parties agree that by preserving documents, things, and ESI for the purpose of this litigation, they are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

2.   This Stipulation and Order does not modify any Party's obligation to maintain and preserve documents, things, and ESI where otherwise required by law, pursuant to a court order or administrative order, or in response to other anticipated litigation.

### B.   Limitations on Obligation to Preserve and Produce

Subject to § II.E.1.c below, for purposes of this action, the Parties agree to limit the scope of preservation as described in this section.

1.   The Parties agree that they do not need to take specific, affirmative steps to preserve for purposes of this litigation the following categories of ESI:

   a.   Delivery or read receipts of e-mail;

   b.   Logs or other data from video-conferencing (including, e.g., Teams or Zoom) or instant messaging tools involving (i) attorneys for the Plaintiffs in this case (and their staff) and/or (ii) attorneys for Defendants in this case (and their staff);

4

c. Temporary or cache files, including internet history, web browser cache, and cookie files, wherever located;

d. Internally facing server system logs;

e. Externally facing or hosted file sharing system logs;

f. System data from photocopiers or fax machines;

g. Auto-saved copies of electronic documents;

h. Deleted, slack, fragmented, or other data only accessible by forensics; and

i. Random access memory ("RAM"), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

j. Logs of or other data from audio calls (including, e.g., landline phones, mobile devices, and Voice Over Internet Protocol ("VOIP")) made to or from (i) attorneys for the Plaintiffs in this case (and their staff) and/or (ii) attorneys for Defendant(s) in this case (and their staff);

k. Voicemail messages on the voicemail systems of (i) attorneys for the Plaintiffs in this case (and their staff) and/or (ii) attorneys for Defendants in this case (and their staff);

2. When duplicate copies[3] of relevant ESI exist in more than one location, this Order does not require a Party to preserve all duplicates as follows:

    a.    ESI existing or stored on mobile or portable devices (*e.g.*, smartphones, tablets, thumb drives, CDs, DVDs, etc.) or file sharing sites does not need to be preserved pursuant to this Order *provided that* duplicate copies of the ESI, including metadata, are preserved in another location reasonably accessible to the Party.

    b.    ESI on backup tapes, continuity of operations or disaster recovery systems, data or system mirrors or shadows, and other systems that are used primarily for the purpose of system recovery or information restoration and are not reasonably accessible ("Backup Systems") need not be preserved pursuant to this Order *provided that* duplicate copies of relevant ESI have been preserved in another reasonably accessible location. However, if a Party knows that relevant ESI exists *only* on a Party's Backup System, the Party will take reasonable steps to

---

[3] A "duplicate" in the context of this Stipulation and Order means a copy of an identical document, identified by matching hash values, as described in § II.E.2.f below.

preserve ESI on the Backup System until the Parties can agree on how and when the ESI will be preserved or produced. If the Parties cannot reach agreement, they will seek a ruling from the Court.

3.     The Parties agree not to seek discovery of documents, things, and ESI that they have agreed not to preserve pursuant to § II.B.1–2 above. As provided in § II.E.1.c below, the Parties do not need to list such items on a privilege log prepared and served in connection with discovery in this case.

**C.     Limitations on Obligation to Collect, Review, and Produce**

Subject to § II.E.1.c below, for purposes of this action, the Parties agree to limit the scope of collection, review, and production as described in this section.

1.     For relevant documents, things, or ESI (including internal communications, drafts, versions, and collaboration on case-related work) created or exchanged *on or after* December 30, 2021, the date on which the first of these cases was filed, the Parties agree that they do not need to collect, review, or produce such materials created by and, if shared with any other(s), exchanged *solely among*: (1) attorneys for any of the Plaintiffs in this case (and their staff); or (2) attorneys for any of the Defendants in this case (and their staff). The Parties further agree that they do not need to collect, review, or produce privileged communications

exchanged solely between the Parties and their attorneys, created on or after December 30, 2021, provided that the communications do not include non-privileged materials.

2.     For relevant documents, things, or ESI (including internal communications, drafts, versions, and collaboration on case-related work) created or exchanged *before* December 30, 2021, the Parties agree that they do not need to collect, review, or produce such materials created by and, if shared with any other(s), exchanged *solely among* (1) the attorneys for a particular Plaintiff (and their staff); or (2) the attorneys for a particular Defendant (and their staff).

3.     The Parties agree not to seek discovery of documents, things, and ESI that they have agreed not to collect, review, or produce pursuant to § II.C.1-2 above. As provided in § II.E.1.c below, the Parties do not need to list such items on a privilege log prepared and served in connection with discovery in this case.

**D.     Identification and Production of Documents, Things, and ESI**

1.     Search Process and Criteria

a.     It is the responsibility of the Party responding to a discovery request to identify and produce responsive information including ESI. The Parties agree to meet and confer if either believes that date ranges or the use of keyword search criteria or analytic tools

8

should be used to identify responsive ESI. The Parties will also meet and confer prior to the use of any advance culling or technology assisted review methodologies.

b.      The Parties shall produce responsive, non-privileged ESI and hard copy materials from a list of custodians that the Parties will attempt to agree upon. The Parties will cooperate with each other in advising which of their custodians, if any, are likely to have responsive information in their possession, custody or control. In addition, the parties will be responsible for identifying, searching, and producing from all non-custodial data sources (including but not limited to databases, information archives, shared drives, etc.) reasonably likely to have requested information.

c.      The Parties agree that the use of an agreed-on search process or set of search criteria shall not be construed as a waiver of any Party's right to request subsequent searches and productions, where there is a showing that the agreed-to search process and criteria have resulted in inadequate productions or failed to

identify relevant materials. The Parties also reserve their right to object to any additional requests or subsequent searches.

2.    Production Format

a.    ESI and hard copy paper documents will be produced as specified herein.

b.    Each hard copy paper document must be scanned and produced in electronic form as specified herein.

c.    Unless the Parties agree to a different production format, for ESI and scanned hard copy paper documents, black-and-white content shall be scanned or converted to single page Tagged Image File Format ("TIFF"), using CCITT Group IV compression at 300 d.p.i. and that accurately reflects the full and complete information contained in the original document. One image file shall represent one page of the document. Color content shall be produced as JPEG files at 300 d.p.i. using a high-quality setting. Nothing in this provision prevents a Party from scanning, converting, and/or producing documents or content as color images. Documents that cannot be accurately represented in black and white or documents that are primarily in color shall

be scanned or converted to JPEG files using a high-quality setting.

d.    For ESI and scanned hard copy paper documents, the text of all pages in the document must be saved as one file. For ESI, the text must be extracted from the native file. If the extracted text of a native document does not exist or does not represent the entire document, Optical Character Recognition ("OCR") will be provided instead. For hard copy documents and for any redacted documents, OCR text will be provided.

e.    Metadata must be preserved and produced for the fields listed in Appendix A. However, the Parties agree to meet and confer to renegotiate the metadata fields identified in Appendix A should such metadata prove unreasonably burdensome for the producing Party to extract, given the needs of the case or the state in which documents exist in the ordinary course of business. A Party is not obligated to populate manually any of the fields in Appendix A, with the exception of the following, which must always be populated for Documents and ESI: (a) Begin Bates, (b) End

Bates, (c) Begin Attach, (d) End Attach, (e) Text File Path, (f) Custodian, (g) Prod Volume, and (h) SourceParty.

f.     The Parties shall make reasonable efforts to deduplicate ESI. ESI shall be globally deduplicated across all custodial and non-custodial sources. Documents are considered exact duplicates if a document family or stand-alone file has a matching hash value (e.g., MD5 or SHA-1) as compared against the same document type (i.e., family or stand-alone file). Custodian information for deduplicated documents must be preserved and produced in the All_Custodians metadata field.

g.     All productions will provide a consistent load file with the same number and order of fields regardless of the types of documents in the production.

h.     All images (e.g., TIFF, JPEG) will be produced in a directory labeled IMAGES. Subdirectories may be created so that one directory does not contain more than 5,000 files.

i.     All native files (with the proper Windows-associated extension) will be produced in a directory labeled NATIVE. Subdirectories

may be created so that one directory does not contain more than 5,000 files.

j.   An image cross reference file (a file in Concordance Opticon/Relativity .log format that contains Bates Numbers, paths to images, and document break indicators for all ESI in each production) and a DAT load file with standard Concordance delimiters containing all required metadata fields will be produced in a directory labeled DATA.

k.   All extracted text and/or OCR will be produced in a directory labeled TEXT. OCR is searchable text generated for scanned documents or native files that is in ASCII format, where all pages in the document will be represented in one file. The Parties agree to provide a text file for all documents, even if the size of the file is zero. Subdirectories may be created so that one directory does not contain more than 5,000 files.

l.   If a Party needs to redact a portion of a document for which only a native file would be produced, the Parties will meet and confer regarding production of the redacted document.

m.   Except for native files, the Parties will produce responsive documents Bates-stamped with a prefix to indicate the Party producing the documents. The Bates numbering convention shall be in the format "XXX########" where "XXX" represents the short character abbreviation for the producing Party and "########" represents the eight-digit sequential number of the page being produced by that Party. Each Party will use a unique abbreviation. For native files, which cannot be Bates-stamped, the Parties will rename the file as [Bates Number].[extension] with a single-page placeholder image in the production containing the original name of the file and stamped with the corresponding Bates number.

n.   Specifications for Specific File Types:

i.   The Parties will meet and confer to seek agreement on an appropriate production format if a Party identifies text messages that are potentially responsive to a request.

ii.   Audio files and video files shall be produced as native files unless the native form is a proprietary format, in which case the Parties will meet and confer regarding production.

14

Any such conference shall be held within seven days of identification of such materials in initial disclosures, a direct request for the production of audio or video files, or a determination by a producing Party that such materials are responsive to a broader request, and any such conference shall include the technicians with sufficient knowledge to explain the content and format of the material at issue.

iii.   Excel or other types of spreadsheets shall be produced as native files. For each Excel or spreadsheet file, a placeholder image containing the file name shall be included in the production.

iv.   Presentations (e.g., PowerPoint) shall be produced as both (1) color images with extracted text and (2) native files with all notes unaltered.

v.   Social media content (including comments, "likes," sharing, and other interactions with the post(s)) should be produced as individual images with extracted text,

including information about the participants and the date and time of the communications.

vi.   The Parties will meet and confer regarding the production of records or data from systems of record or databases in an agreed upon format. Any such conference shall be held within 14 days (unless the Parties agree to a later date) of identification of databases in initial disclosures, a direct request for the production of databases, or a determination by a producing Party that databases are responsive to a broader request, and any such conference shall include the technicians with sufficient knowledge to explain the content and format of the databases.

o.   The Parties agree to meet and confer regarding alternative production formats, including native files or .pdf, should the producing Party find that it is unduly burdensome to adhere to the production format specified in this section for certain documents, in light of the format in which the documents are maintained in the ordinary course of business.

3.   <u>Production Media</u>

    a.   Except for records or data produced from large databases or database systems (e.g., state voter files), responsive documents and ESI will be produced via .zip file(s) uploaded to an electronic file transfer site, or as otherwise agreed by the Parties. Productions produced via an electronic file transfer site will be divided into .zip files of no more than 20 gigabytes each. In the case of documents and ESI produced by the United States, responsive information will be produced via .zip file(s) uploaded to the Justice Enterprise File Sharing System (JEFS).

    b.   Productions via electronic file transfer will be uploaded in a manner (or otherwise clearly labeled) to indicate (1) the Party producing the information, (2) the date of the production, and (3) the Bates range(s).

    c.   Records or data produced from large databases or database systems (e.g., state voter files, etc.) will be produced on CD, DVD, thumb drive, or hard drive appropriate to the size of the production via overnight delivery to counsel for the requesting Party. Such production media will be clearly labeled to indicate

(1) the Party producing the information, (2) the date of the production, and (3) the Bates range(s).

d.      The Parties agree to remove all encryption or password protection for all ESI produced or, if applicable, to provide passwords or assistance needed to open encrypted files.

**E.      Privileged Documents, Things and ESI**

1.      <u>Privilege Logs and Redactions</u>

a.      Where a producing Party has any document that contains both privileged and non-privileged responsive information, the responsive information shall be produced, but the privileged information may be redacted. The Parties shall redact only those portions of a document that fall within the scope of the attorney-client, attorney work product, common interest, joint defense privilege, or any other applicable privilege or immunity. Only where privileged content is predominant in a document shall a party be exempted from producing the document in redacted form. When a document is withheld on the basis of privilege, the party claiming privilege shall list the information pertaining to the withheld document on a privilege log as set forth below.

Redacted documents are not required to be logged in a Party's privilege log in the first instance; however, a receiving party may request on a document-by-document basis and a producing party shall provide upon request, a privilege log for such documents.

b.   The Parties agree to furnish logs which comply with the legal requirements under the Federal Rules of Civil Procedure. At minimum, the privilege log must contain a Bates range, the type of document, the date of the creation or last modification or transmission of the document, the author or authors of the document with any attorneys designated as such, the recipients of the document (including individuals copied or blind-copied, if available) with any attorneys designated as such, whether the document contains attachments, the privilege or privileges claimed, and the basis for the assertion of the privilege or protection.

c.   Privilege logs may be produced on a rolling basis, but, in any event, no later than 30 days after each associated production. If any log is produced less than 30 days before the close of discovery, the receiving Party shall have 30 days from the date

of receipt to review and register complaints about said log(s), and shall have the right to have those complaints resolved, and have any non-privileged documents produced, regardless of the date of the close of discovery.

d.    If any discovery request appears to call for the production of documents, things or ESI covered by § II.B or II.C above, the responding Party is not required to produce or identify such information on a privilege log. However, if a Party preserves relevant documents, things, or ESI covered by § II.B or II.C above in order to support a claim or defense in this case, the Party shall produce such information or identify it on a privilege log notwithstanding this subsection.

2.    <u>Inadvertent Disclosure of Privileged or Protected Information</u>

a.    The Parties agree that a disclosure of information contained within documents, things, and ESI that is protected by attorney-client privilege, work-product protection, common-interest privilege, and/or applicable governmental privileges (such as deliberative process privilege) does not operate as a subject matter waiver in this case if: (1) the disclosure is inadvertent and

is made in connection with this litigation; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error.

b.  If the producing Party inadvertently discloses information that it asserts is privileged or protected, it will notify the receiving Party within 14 days of discovery of inadvertent disclosure and provide the production date, number, and volume of the disc or drive on which the production was produced, if applicable, ("production media"), and the Bates number(s) or Document ID (for native files) of all material that it believes contains the inadvertently disclosed information.

c.  If a production contains information that the receiving Party believes is privileged or protected and was inadvertently produced, it will promptly notify the producing Party and provide the Bates number(s) or Document ID (for native files) of the item it believes was inadvertently produced. Within 14 days after receiving notification, the producing Party may make a written request for return of the material. If the producing Party does not

send a written request for return of the material to the receiving Party within 14 days of the notification, the producing Party waives all claims of privilege or protection as to the material, but this still does not operate as a subject matter waiver.

d.      When the receiving Party receives a written demand for return of the material, it will make reasonable, good faith efforts to promptly sequester, return or destroy all inadvertently produced material identified by the producing Party. If copies of inadvertently produced materials are located or stored on the receiving Party's Backup System(s), those copies need not be affirmatively removed but, rather, the receiving Party may overwrite those copies according to its normal records management procedures.

e.      If the receiving Party must destroy or delete production media (e.g., CD, DVD, thumb drive, or downloaded file(s)) in order to destroy or delete inadvertently produced material, the producing Party will provide a duplicate copy of the production media minus only the inadvertently produced material within 14 days

of its written request for return of the material to the receiving Party.

f.      If the receiving Party intends to challenge the claim of privilege or protection or the inadvertence of the production, it will sequester and retain the inadvertently produced material while seeking a ruling from the Court. Nothing in this Stipulation prevents access by a receiving Party's information technology or security personnel from accessing, in the normal course of their work, systems or locations where inadvertently produced material is sequestered.

## F.    Costs of Document Production

Each Party shall bear the costs of producing its own documents, things, and ESI.

## III.   MISCELLANEOUS

1.      The Stipulation may be executed in counterparts.

2.      The terms of this Stipulation and Order are not exhaustive. Each Party reserves the right to subsequently request to meet and confer to address any discovery matters, including forms of production and other matters not addressed herein.

3.      None of the meet and confer provisions of this Stipulation shall be construed to extend the time within which a Party must respond to a discovery request.

4.      The Parties agree that discovery requests may be served by email.

Agreed to by counsel for the Parties:

For the *Alpha Phi Alpha* Plaintiffs:

*/s/ Sophia Lin Lakin*_____          Date: 09/01/22_____

For the *Pendergrass* Plaintiffs and the *Grant* Plaintiffs:

*/s/ Joyce Gist Lewis*_____          Date: 09/01/22_____

For Defendants:

*/s/ Bryan Tyson*_____          Date: 09/01/22_____

So ORDERED:

DATE:_ September 2, 2022_____          _ s/Steve C. Jones_____
                                                 JUDGE STEVE C. JONES
                                                 USDC, NDGa

**APPENDIX A**

| Field Name | Definition | Include for emails and text messages | Include for other electronic files | Include for paper documents |
|---|---|---|---|---|
| **Begin_Bates** | Bates number for the first image of a document (or the Bates number of the placeholder page for a native document). | Y | Y | Y |
| **End_Bates** | Bates number for the last image of a document (or the Bates number of the placeholder page for a native document). | Y | Y | Y |

26

| Field Name | Definition | Include for emails and text messages | Include for other electronic files | Include for paper documents |
|---|---|---|---|---|
| **Begin_Attach** | <u>Only</u> for document families,[4] provide Bates number for the first image of the first attachment or embedded file.  Leave this field blank if there is no document family. | Y | Y | Y |
| **End_Attach** | <u>Only</u> for document families, provide Bates number for the last image of the last attachment or embedded file.  Leave this field blank if there is no document family. | Y | Y | Y |

---

[4] Document Family means a group of related documents, including (1) paper documents that were grouped together or physically attached by clips, staples, binding, folder, etc.; (2) email with its attachment(s); and (3) files with embedded documents.

| Field Name | Definition | Include for emails and text messages | Include for other electronic files | Include for paper documents |
|---|---|---|---|---|
| **Parent ID** | Bates number of the parent document (filled in only for "child" documents). | Y | Y | Y |
| **PgCount** | The number of images produced for this document (1 for placeholder). | Y | Y | Y |
| **From** | "From" field in email. | Y | | |
| **To** | "To" field in email. | Y | | |
| **CC** | "CC" field in email. | Y | | |
| **BCC** | "BCC" field in email. | Y | | |
| **Subject** | "Subject" field in email. | Y | | |
| **Attachments** | File names of the attachments. | Y | | |

| Field Name | Definition | Include for emails and text messages | Include for other electronic files | Include for paper documents |
|---|---|---|---|---|
| **DateTimeSent** | DateTimeSent field from email. Include both date and time (format: 9/28/2012 1:16 PM or 9/28/2012 13:16:34). | Y | | |
| **Redacted** | "Yes" if the document has been redacted. | Y | Y | Y |
| **Confidential** | Confidential Designation (if any). | Y | Y | Y |
| **MD5Hash** | The MD5 hash value calculated when the file was collected or processed. | Y | Y | |
| **Prod_FilePath** | The path to the native file on the production media. | | Y | |
| **Native_filename** | Original name of the native file when the file was collected or processed. | Y | Y | |

| Field Name | Definition | Include for emails and text messages | Include for other electronic files | Include for paper documents |
|---|---|---|---|---|
| **Text File Path** | Path to the text file on the production media. | Y | Y | Y |
| **All_Custodian** | All custodians associated to original produced file (Last Name, First Name format) Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions. For instance: Smith, John A. and Smith, John B. | Y | Y | |
| **Calendar_Start_Date_Time** | Start date and time of calendar or appointment | | Y | |
| **Author** | Author of document | | Y | Y |

| Field Name | Definition | Include for emails and text messages | Include for other electronic files | Include for paper documents |
|---|---|---|---|---|
| **LastAuthor** | Last author or editor of document, from document properties | | Y | |
| **Email Importance** | Whether an e-mail was marked with "high importance." | Y | | |
| **Comments** | Comments field value pulled from the metadata of the native file. | | Y | |
| **Has_Comments** | Microsoft Word, Excel or PowerPoint document contains comments. | | Y | |
| **Has_Track_Changes** | Microsoft Word or Excel document contains tracked changes. | | Y | |
| **Hidden_Text** | Document has hidden text. | | Y | |

| Field Name | Definition | Include for emails and text messages | Include for other electronic files | Include for paper documents |
|---|---|---|---|---|
| **DateCreated** | Date the document was created (format: MM/DD/YYYY) | | Y | |
| **TimeCreated** | Time at which document was created | | Y | |
| **DateLastModified** | Date an electronic document was last modified (format: MM/DD/YYYY) | | Y | |
| **TimeLastModified** | Time at which document was last modified | | Y | |
| **FileExt** | File extension | Y | Y | |
| **FileSize** | The original file size of the produced document | | Y | |
| **ProdVolume** | The production volume associated with the produced file | Y | Y | Y |
| **SourceParty** | The name of the Producing Party | Y | Y | Y |

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing Stipulation and Order Regarding Discovery

has been prepared in accordance with the font type and margin requirements of LR

5.1, N.D. Ga., using font type of Times New Roman and a point size of 14.

Dated: September 1, 2022          <u>**/s/ *Sophia Lin Lakin***</u>
                                  *Counsel for the* Alpha Phi Alpha
                                  *Plaintiffs*