# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ANNIE LOIS GRANT; QUENTIN T. HOWELL; ELROY TOLBERT; TRIANA ARNOLD JAMES; EUNICE SYKES; ELBERT SOLOMON; DEXTER WIMBISH; GARRETT REYNOLDS; JACQUELINE FAYE ARBUTHNOT; JACQUELYN BUSH; and MARY NELL CONNER,<br><br>      Plaintiffs,<br><br>  v.<br><br>BRAD RAFFENSPERGER, in his official capacity as the Georgia Secretary of State,<br><br>      Defendant. | CIVIL ACTION FILE NO. 1:22-CV-00122-SCJ |

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR OBJECTIONS TO THE GEORGIA GENERAL ASSEMBLY'S REMEDIAL STATE LEGISLATIVE PLANS

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 2

    I.   The Court has the power and duty to require the implementation of reapportionment plans that completely remedy the vote-dilution harms that Plaintiffs proved at trial. ............................................................................... 2

    II.   The new plans violate this Court's instruction to preserve the minority opportunity districts in the old plans. .................................................................. 5

CONCLUSION .................................................................................................. 7

## INTRODUCTION

Citing virtually no authority, Defendant Raffensperger takes the novel position that the Court lacks the power to require new majority-Black districts in the specific areas of the state where Plaintiffs established unlawful vote dilution. But the state's position ignores the fact that the scope of the Court's power to effectuate remedial reapportionment plans is defined by fundamental principles of equity, *Arbor Hill Concerned Citizens v. Cnty. of Albany*, 357 F.3d 260, 262 (2d Cir. 2004) (per curiam), and it has long been the case that the nature of an equitable violation defines the scope of the proper remedy, *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 16 (1971). The *Grant* Plaintiffs proved unlawful vote dilution in specific areas of Georgia, and the Court therefore has not only the equitable power but the duty to provide complete relief by requiring new majority-Black districts that draw from the vote-dilution areas.

The General Assembly not only violates the spirit of this Court's order by drawing new majority-Black districts that fall outside the vote-dilution areas, it also violates the Court's explicit instructions. The Court's order expressly prohibited the General Assembly from "eliminating [any] minority opportunity districts" in drawing new apportionment plans, Doc. 294 at 509–10, and yet, Defendant Raffensperger does not dispute that the new plans dismantle several state legislative districts that provided Black Georgians with an opportunity to elect their candidates

of choice. The Secretary's position that *Bartlett v. Strickland* forecloses the Court from requiring the state to preserve these "crossover districts" ignores the fact that *Bartlett* considered only whether Section 2 requires the *creation* of crossover districts, not whether the *destruction* of crossover districts would eliminate a minority opportunity district. By dismantling these crossover districts, Black Georgians now "have less opportunity . . . to elect representatives of their choice." 52 U.S.C. § 10301(b). The Court should enjoin the use of the new state legislative plans and immediately proceed to adopt new ones.

## ARGUMENT

I.  **The Court has the power and duty to require the implementation of reapportionment plans that completely remedy the vote-dilution harms that Plaintiffs proved at trial.**

Secretary Raffensperger's novel argument that the Court lacks the power to require new majority-Black districts in the specific areas where Plaintiffs proved unlawful vote dilution ignores the fundamental principles of equity that govern the Court's ability to require new redistricting plans.

The Court has the power to require new state legislative plans that draw exclusively from the vote-dilution areas because "[t]he scope of [a] federal court['s] power to remedy apportionment violations is defined by principles of equity." *See Arbor Hill Concerned Citizens,* 357 F.3d at 262. Here, the Court ruled that Georgia's 2021 state senate plan "violates Section 2 of the Voting Rights Act as to . . . Enacted

2

Senate Districts 10, 16, 17, 25, 28, 30, 34, 35, 43, and 44," and it ruled that the 2021 state house plan "violates Section 2 of the Voting Rights Act as to . . . Enacted House Districts 61, 64, 74, 78, 117, 133, 142, 143, 145, 147, and 149." Doc. 294 at 514. It follows that the Court's equitable powers allow it to require remedial reapportionment plans that remedy these Section 2 violations by creating new majority-Black districts in these areas of Georgia.[1]

No party disputes that the General Assembly had the freedom to draw additional majority-Black districts that differed in some respects from the illustrative majority-Black districts offered by Mr. Esselstyn and Mr. Cooper. Plaintiffs have argued only that the new majority-Black districts in the new state legislative plans must draw from the same *parts* of Georgia from which the illustrative plans drew. The state's new plans fails to measure up. Defendant concedes that the new state legislative plans draw in large swaths of Georgia that fall *outside* the vote-dilution areas while failing to provide relief to tens of thousands of Black voters *inside* the vote-dilution areas.

Not only does the Court have the power to limit the remedial districts to the same vote-dilution areas that Plaintiffs proved at trial, but it must do so to provide

---

[1] It makes no difference that "th[e] Court identified the injury and the remedy in two distinct parts of its [o]rder." Resp. at 28. "[T]he nature of the violation," not the style of the headings in a court order, "determines the scope of the remedy," *see Swann*, 402 U.S. at 16.

3

the complete relief that Section 2 requires. The Court's task in supervising the implementation of remedial reapportionment plans requires it to "exercise . . . traditional equitable powers to fashion . . . relief . . . that . . . completely remedies the prior dilution of minority voting strength." *United States v. Dallas Cnty. Comm'n*, 850 F.2d 1433, 1438 (11th Cir. 1988) (quoting S. Rep. No. 97-417, at 31 (1982)). The Court cannot approve redistricting plans that stretch far outside the vote-dilution areas because such plans cannot provide Plaintiffs with complete relief. Providing a remedy for Black voters outside the vote-dilution area requires depriving a remedy for tens of thousands of Black voters who this Court found have suffered a vote-dilution injury.

Defendant's suggestion that limiting the remedy to the vote dilution area would encroach on federalism concerns, Doc. 327 at 32–34, ignores the fact that in Section 2 claims, the "right and remedy are inextricably bound together, for to prove vote dilution by districting one must prove the specific way in which dilution may be remedied by redistricting." *McGhee v. Granville County*, 860 F.2d 110, 120 (4th Cir. 1988). It makes sense, then, for the remedy to be specific to the vote-dilution area identified by the Court and already proven by Plaintiffs the way in which said dilution could be remedied.

## II. The new plans violate this Court's instruction to preserve the minority opportunity districts in the old plans.

Defendant's dismissal of the need to protect minority-opportunity districts both misunderstands Plaintiffs' arguments and disregards the policy considerations that undergird Section 2.

While all parties agree that "§ 2 does not mandate creating or preserving crossover districts" in the first instance, *Bartlett v. Strickland*, 556 U.S. 1, 23 (2009) (plurality opinion), the fact that crossover districts are not "*required*" under federal law does not mean that such districts are not "*protected*," Resp. 52 (emphases added). As the *Barlett* plurality noted, "[c]rossover districts are . . . the result of white voters joining forces with minority voters to elect their preferred candidate," and "[t]he Voting Rights Act was passed to foster this cooperation." *Id.* at 24. Section 2's totality-of-circumstances inquiry, in turn, "springs from the demonstrated ingenuity of state and local governments in hobbling minority voting power," including the use of "sophisticated devices that dilute minority voting strength." *Johnson v. De Grandy*, 512 U.S. 997, 1018 (1994) (quoting S. Rep. No. 97-417, at 10 (1982)). The remedial legislative plans passed by the General Assembly effectuate precisely this sort of surreptitious dilution: Under the guise of remedying Section 2 violations, SB 1EX and HB 1EX *unnecessarily* dismantle districts where Black voters previously had the opportunity to elect their preferred candidates, "trad[ing] off" the rights of Black Georgians in a manner the U.S. Supreme Court has expressly foreclosed. *Id.*

5

at 1019; *see also* Objs. 16–18 (explaining why General Assembly did not need dismantle these districts to remedy underlying Section 2 violations). In short, neither *Bartlett* nor any other Supreme Court decision sanctions the State's decision to run roughshod over some Black Georgians' voting power in order to safeguard the rights of others.[2]

Defendant ignores this caselaw and reasoning in favor of a red herring: that Plaintiffs "seek to insulate these districts solely based on the fact that they currently elect Democratic members to the General Assembly." Resp. 51–52. Not so: This Court's order (and, for that matter, the U.S. Constitution) guards against the intentional dismantling of these districts because they currently elect *Black-preferred* members to the General Assembly. That Black voters in Georgia overwhelmingly support Democratic candidates is of no legal significance in this regard; what matters is that, by dismantling these crossover districts, Black Georgians now "have less opportunity . . . to elect representatives of their choice." 52 U.S.C. § 10301(b). And though Defendant once again cites partisanship to raise the specter of "an unconstitutional interpretation of the VRA," Resp. 52 n.10, he

---

[2] Notably, as the *Bartlett* plurality noted, "if there were a showing that a State intentionally drew district lines in order to destroy otherwise effective crossover districts, that would raise serious questions under both the Fourteenth and Fifteenth Amendments." 556 U.S. at 24 (citing *Reno v. Bossier Par. Sch. Bd.*, 520 U.S. 471, 481–82 (1997)).

cannot transmogrify a valid application of Section 2 simply by replacing the term "Black-preferred" with "Democratic." While the two terms are interchangeable as a practical matter in this case, they cannot be so capriciously swapped as a legal matter.

Ultimately, this Court correctly ordered that the State's remedial plans could not "eliminat[e] minority opportunity districts." Doc. 294 at 509–10; *see also* Objs. 13 (collecting cases where courts specified the need for *additional* minority-opportunity districts to remedy Section 2 violations). And though Defendant protests that "there is no other way [the State] could have complied with the Order" other than by "eliminating existing majority-white districts," Resp. 53, he ignores the fact that it is readily feasible to remedy the Section 2 violations identified by the Court without eliminating existing *minority-opportunity* districts—and *that* is the basis for Plaintiffs' objections.

## CONCLUSION

The General Assembly has failed to provide the complete relief that Section 2 requires. Plaintiffs respectfully ask the Court to enjoin HB 1EX and SB 1EX for failing to remedy the Section 2 violations and immediately proceed to adopt lawful remedies to ensure Plaintiffs obtain relief in time for the 2024 election.

Dated: December 19, 2023

By: **Adam M. Sparks**
Joyce Gist Lewis
Georgia Bar No. 296261
Adam M. Sparks
Georgia Bar No. 341578
**KREVOLIN & HORST, LLC**
One Atlantic Center
1201 West Peachtree Street, NW,
Suite 3250
Atlanta, Georgia 30309
Telephone: (404) 888-9700
Facsimile: (404) 888-9577
Email: JLewis@khlawfirm.com
Email: Sparks@khlawfirm.com

Respectfully submitted,

Abha Khanna*
Jonathan P. Hawley*
Makeba A.K. Rutahindurwa*
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue,
Suite 2100
Seattle, Washington 98101
Phone: (206) 656-0177
Facsimile: (206) 656-0180
Email: AKhanna@elias.law
Email: JHawley@elias.law
Email: MRutahindurwa@elias.law

Michael B. Jones
Georgia Bar No. 721264
**ELIAS LAW GROUP LLP**
250 Massachusetts Avenue NW,
Suite 400
Washington, D.C. 20001
Phone: (202) 968-4490
Facsimile: (202) 968-4498
Email: MJones@elias.law

*Counsel for Plaintiffs*

*Admitted *pro hac vice*

8

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing **PLAINTIFFS' REPLY IN SUPPORT OF THEIR OBJECTIONS TO THE GEORGIA GENERAL ASSEMBLY'S REMEDIAL STATE LEGISLATIVE PLANS** has been prepared in accordance with the font type and margin requirements of LR 5.1, N.D. Ga., using font types of Times New Roman, point size of 14, and Century Schoolbook, point size of 13.

Dated: December 19, 2023      **Adam M. Sparks**
Adam M. Sparks
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I have on this date caused to be electronically filed a copy of the foregoing **PLAINTIFFS' REPLY IN SUPPORT OF THEIR OBJECTIONS TO THE GEORGIA GENERAL ASSEMBLY'S REMEDIAL STATE LEGSLATIVE PLANS** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to counsel of record.

Dated: December 19, 2023      **Adam M. Sparks**
Adam M. Sparks
*Counsel for Plaintiffs*