IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **ANNIE LOIS GRANT, et al.,** | **CIVIL ACTION FILE** |
| Plaintiffs, | No. 1:22-CV-00122-SCJ |
| v. | |
| **BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia,** | |
| Defendant. | |

## ORDER

This action is before the Court to address Plaintiffs' objections to SB 1EX, the remedial State Senate redistricting plan, and HB 1EX, the remedial State House redistricting plan (the "Remedial Senate Plan" and "Remedial House Plan," respectively, and collectively, the "2023 Remedial Plans"). Doc. No. [317].[1] As

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers cited herein are those imprinted by the Court's docketing software.

explained below, the Court **OVERRULES** Plaintiffs' objections and **APPROVES** the 2023 Remedial Plans.

## I. BACKGROUND

Plaintiffs filed this suit alleging that Georgia's Senate and House electoral plans passed by the General Assembly (SB 1EX and HB 1EX, respectively, and henceforth the "2021 Enacted Plans") diluted the votes of Black Georgians in violation of Section Two of the Voting Rights Act of 1965 ("Section 2"). This Court conducted a bench trial on Plaintiffs' claims as well as the claims from two related cases alleging Section 2 violations.[2] Following the trial, this Court issued a consolidated Opinion and Memorandum OF Decision on October 26, 2023, containing its Findings of Fact and Conclusions of Law. Doc. No. [294] ("October 26, 2023 Order"). Ultimately, this Court concluded that the 2021 Enacted Plans violated Section 2 in specific geographic areas of the State. To remedy the statutory violations, the Court ordered the creation of two additional majority-

---

[2] See Alpha Phi Alpha v. Raffensperger, No. 1:21-cv-05337-SCJ (challenging the 2021 Enacted Plans at issue here) and Pendergrass v. Raffensperger, No. 1:21-CV-05339-SCJ (challenging SB 2EX, the 2021 congressional electoral plan). The Court addresses the Pendergrass and Alpha Phi Alpha Plaintiffs' objections to the State's remedial plans in separate orders.

Black Senate districts in south-metro Atlanta, one additional majority-Black House district in west-metro Atlanta, and two additional majority-Black House districts in-and-around Macon-Bibb. Id. at 509. The Court also stated that "the State cannot remedy the Section 2 violations . . . by eliminating minority opportunity districts elsewhere in the plans." Id. at 509–10.

In accordance with Supreme Court precedent, this Court afforded the General Assembly the opportunity to meet the requirements of Section 2 by adopting substitute measures. Id. (citing Wise v. Lipscomb, 437 U.S. 535, 539–40 (1978)). During a special session beginning November 29, 2023, the General Assembly the Remedial Senate plan, and the Remedial House plan. On December 8, 2023, Governor Brian Kemp signed the bills into law. Doc. No. [312].

Plaintiffs objected to the 2023 Remedial Plans (Doc. No. [317]), Defendant responded (Doc. No. [326]), and Plaintiffs replied (Doc. No. [327]). This Court conducted a hearing on the objections and the response thereto on December 20, 2023. With this background and the Parties' arguments in mind, the Court now determines whether the 2023 Remedial Plans comply with this Court's October 26, 2023 Order.

## II.     OBJECTIONS

Plaintiffs argue that the Court required the General Assembly to create two additional majority-Black state Senate districts (SDs) and five additional majority-Black state House Districts (HDs) from "explicitly defined vote-dilution area[s]," in south- and west-metro Atlanta and Macon-Bibb (i.e., according to Plaintiffs, 2021 SDs 10, 16, 17, 25, 28, 30, 34, 35, 43 and 44; and 2021 HDs 61, 64, 74, 78, 117, 133, 142, 143, 145, 147, and 149) to remedy the Section 2 violations in the 2021 Enacted Plans. Doc. No. [317], 3, 6. Plaintiffs acknowledge that the 2023 Remedial Plans added two additional majority-Black SDs in the south-metro Atlanta area (2023 SDs 17 and 28), one additional majority-Black HD in west-metro Atlanta (2023 HD 64), two additional majority-Black HDs in south-metro Atlanta (2023 HDs 74 and 117), and two additional majority-Black HDs near Macon-Bibb (2023 HDs 145 and 149). Id. at 6–7. Plaintiffs contend, however, that the Court should nevertheless reject the 2023 Remedial Plans for two reasons: (1) the 2023 Remedial Plans do not completely remedy the identified vote dilution because the plans draw "only partially" from the specified vote-dilution area and the new districts include a number of Black voters from outside the Court's enumerated 2021 SDs and HDs implicated in its finding of vote dilution in the

4

2021 Enacted Plans; and (2) the 2023 Remedial Plans contravene the Court's directive that the remedial plans could not eliminate existing "minority-opportunity districts." Id. at 7, 13.

On this latter point specifically, Plaintiffs assert that the General Assembly eliminated five "crossover districts" in the 2023 Remedial Plans. Id. at 16. Plaintiffs acknowledge that "Section 2 does not require crossover districts," but they contend that this "does not mean that crossover districts are not 'minority opportunity districts.'" Id. at 17. This is so, according to Plaintiffs, because in crossover districts, minority groups receive help from white voters to elect their candidates of choice. Id. Plaintiffs further argue that the elimination of these crossover districts was unnecessary to remediate the proven Section 2 violations and instead evidences the General Assembly's willful disregard of the Court's October 26, 2023 Order. Id. at 18. Finally, Plaintiffs argue that their illustrative plans "solidly outperform" the 2023 Remedial Plans. Id. at 19.

In response, Defendant points out that the Court's order required new districts in specific *regions*, as opposed to specific *districts*. Doc. No. [326], 31–32. Defendant recognizes that a Section 2 violation cannot be remedied by creating a new majority-Black district "somewhere else in the state." Id. at 32. Defendant

5

nevertheless emphasizes that this prohibition does not require remedial districts precisely or only in the districts specified by the Court following the liability phase of the proceedings. Id. at 32–33. Furthermore, Defendant asserts that the remedial districts were placed in the geographic areas specified by the Court. Id. at 36. Additionally, Defendant argues that the "minority opportunity districts" Plaintiffs complain of losing were "crossover districts" (i.e., districts where members of the majority help a large enough minority elect its candidate of choice) and are not required by Section 2. Id. at 55. Therefore, according to Defendant, the State has complied with this Court's order, which, under Plaintiffs' arguments, completes the inquiry.

### III.   LEGAL STANDARD

The initial task before this Court is to determine whether the 2023 Remedial Plans remedy the Section 2 violations identified in the October 26, 2023 Order through the incorporation of additional legislative districts in the areas identified by the Court in which Black voters have a demonstrable opportunity to elect their candidates of choice. The Eleventh Circuit has instructed that the new plans must "completely remed[y] the prior dilution of minority voting strength and fully provide[] equal opportunity for minority citizens to participate and to elect

6

candidates of their choice." United States v. Dallas Cnty. Comm'n, 850 F.2d 1433, 1437–38 (11th Cir. 1988) (quoting S.REP. No 97-417, at 31 (1982)); see also Dillard v. Crenshaw Cnty., 831 F.2d 246, 252–53 (11th Cir. 1987) ("This Court cannot authorize an element of an election proposal that will not with certitude completely remedy the Section 2 violation."). Nonetheless, a complete remedy "does not mean that a § 2 plaintiff has the right to be placed in a majority-minority district once a violation of the statute is shown." Shaw v. Hunt, 517 U.S. 899, 917 n.9 (1996). This is because the State retains broad discretion in drawing districts to comply with the mandate of Section 2. Id. (citing Voinovich v. Quilter, 507 U.S. 146, 156–57 (1993); Growe v. Emison, 507 U.S. 25, 32–37 (1993)).

Next, the Court must determine whether the elimination of 2021 SDs 6 and 42 and 2021 HDs 40, 81 and 82 violated this Court's order, which stated, "The State cannot remedy the Section 2 violations described herein by eliminating minority opportunity districts elsewhere in the plans." Doc. No. [294], 509–10.

## IV.   ANALYSIS

As an initial matter, the Court rejects the foundational assumption of Plaintiffs' arguments: that because the October 26, 2023 Order listed specific House and Senate districts where it found that Plaintiffs had proven vote

7

dilution—referred to now by Plaintiffs as the "vote dilution area"—the State was confined to making changes in those districts when creating the 2023 Remedial Plans. First, Plaintiffs cite no relevant authority to support this view. Second, and more importantly, the Court's intent in delineating specific districts (derived from the list of districts Plaintiffs challenged in the lawsuit) was to distinguish areas of the State where Plaintiffs satisfied their burden of proving Section 2 violations and those areas where they failed to carry their burden. The Court did not, and could not, confine the General Assembly to working only within the enumerated districts to create the additional majority-Black districts. Cf. Shaw, 517 U.S. at 917 n.9 ("States retain broad discretion in drawing districts to comply with the mandate of § 2."). Rather, the Court set forth geographic guidance by specifying additional Black-majority districts in the following regions: south-metro Atlanta; west-metro Atlanta, and in-and-around Macon-Bibb. Doc. No. [294], 509.

It is certainly true that the State cannot remedy vote dilution by creating a safe majority-Black district somewhere else in the State. See Shaw, 517 U.S. at 917. Here, the General Assembly drew two additional majority-Black Senate districts: 2023 Remedial SDs 17 and 28. Remedial SD 17 is wholly contained inside of the

vote dilution area, and Remedial SD 28 is nearly contained therein. See Doc. No. [326-2], 20 & fig. 1 (Dr. Michael Barbour's Report). And 56% of the BVAP in Remedial SD 28 was drawn from within the same "vote dilution area." Id.



The SDs listed in the October 26, 2023 Order are shown in green.

The Remedial House Plan adds three majority-Black districts in the metro-Atlanta area: Remedial HDs 64, 74, and 117. Like the new senate districts, Remedial HD 74s and 117 significantly overlap districts enumerated in the Court's October 26, 2023 Order:

9



The HDs listed in the October 26, 2023 Order are shown in green.

Similarly, HD 64 has significant areas in common with the Court's enumerated districts.[3]

---

[3] As explained by Defendant's expert, Dr. Barber, the horseshoe shape of the enumerated districts around Remedial HD 64 made substantial overlap difficult.



The HDs listed in the October 26, 2023 Order are shown in green.

---

Importantly, however, Plaintiffs' illustrative plan offered a majority-Black district in this same area with even less overlap than the House Remedial Plan. Doc. No. [326-2], 32.

11

The Remedial House Plan adds two majority-Black districts in the Macon-Bibb area, HD 145 and HD 149. HD 149 is wholly contained within the vote dilution area, and HD 145 is largely within districts enumerated by the Court.



The HDs listed in the October 26, 2023 Order are shown in green.

Plaintiffs' objections contain the overarching theme that the 2023 Remedial Plans do not cure vote dilution for enough Black voters in the specified areas. However, it is certain that "the inevitably rough-hewn, approximate redistricting remedy" will result in some members of the minority group residing outside of the minority-controlled districts. McGhee v. Granville Cnty., 860 F.2d 110, 119 (4th Cir. 1988). Thus, Plaintiffs' only remaining argument is Plaintiffs' proposed districts help more Black voters than the 2023 Remedial Plans. To put it more starkly, Plaintiffs contend that their illustrative plans are better remedies than the State's 2023 Remedial Plans. Because this Court cannot intrude upon the domain of the General Assembly, however, it declines Plaintiffs' invitation to compare the Remedial Plans with plans preferred by Plaintiffs and crown the illustrative plans the winners. See Allen v. Milligan, 599 U.S. 1, 21 (2023) ("The District Court . . . did not have to conduct a beauty contest between plaintiffs' maps and the State's.") (quoting Singleton v. Merrill, 582 F. Supp. 3d 924, 1012 (N.D. Ala. 2022)).

The second objection raised by Plaintiffs pertains to crossover districts—white-majority districts where enough white voters join with Black voters to elect the Black voters' candidate of choice. Bartlett v. Strickland, 556 U.S. 1, 13 (2009).

13

Plaintiffs presume that the Court's instruction to the State to refrain from eliminating "minority opportunity districts" referred to these crossover districts (i.e., SDs 6 and 42, and HDs 40, 81, and 82). Putting aside the question of whether there was evidence introduced to establish that the five legislative districts at issue elect Black voters' candidates of choice, the very definition of a crossover district removes it from Section 2 protection. Bartlett, 556 U.S. at 16. This is so because the third Gingles precondition requires white bloc voting. Thornburg v. Gingles, 478 U.S. 30, 51 (1986). Therefore, this Court's reference to minority opportunity districts was not, and could not, be applicable to crossover districts. Moreover, this case has, from the outset, been about Black voters. All analysis by the Court as to political cohesiveness, the second Gingles precondition, has pertained to Black voters. Id. There has been no finding by this Court that Black voters in Georgia politically join with another racial group *and* that *white* voters vote as a bloc to defeat the candidate of choice of the Black voters-plus-another racial group. Therefore, the dismantling of any alleged crossover districts by the State in creating the 2023 Remedial Plans did not violate this Court's order.

As the Court recognized in its October 26, 2023 Order, "redistricting and reapportioning legislative bodies is a legislative task [which] the federal courts

14

should make every effort not to preempt." Doc. No. [294], 509. Here, the committee hearing transcripts show that the General Assembly created the 2023 Remedial Plans in a manner that politically protected the majority party (i.e., the Republican Party) as much as possible. Doc. No. [326-3], Tr. 12:2–12; [326-4], Tr. 25:21–25. However, redistricting decisions by a legislative body with an eye toward securing partisan advantage does not alone violate Section 2. See Rucho v. Common Cause, 588 U.S. ___, 139 S. Ct. 2484, 2501 (2019). In fact, the Supreme Court has expressly stated that federal judges have no license to reallocate political power between the two major political parties, given the lack of constitutional authority and the absence of legal standards to direct such decisions. Id. at 2507; see also Seastrunk v. Burns, 772 F.2d 143, 151 (5th Cir. 1985) ("It is the legislature's function to make decisions of basic political policy. Thus, even where a legislative choice of policy is perceived to have been unwise, or simply not the optimum choice, absent a choice that is either unconstitutional or otherwise illegal under federal law, federal courts must defer to that legislative judgment."). Plaintiffs' objections to the contrary are overruled.

## V.     CONCLUSION

The Court finds that the General Assembly fully complied with this Court's order requiring the creation of Black-majority districts in the regions of the State where vote dilution was found. The Court further finds that the elimination of crossover districts did not violate the October 26, 2023 Order. Hence, the Court **OVERRULES** Plaintiffs' objections (Doc. No. [317]) and **HEREBY APPROVES** SB 1EX and HB 1EX.

**IT IS SO ORDERED** this 28th day of December, 2023.

_____
**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**