**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

For the Eleventh Circuit

---

No. 23-13914

---

ALPHA PHI ALPHA FRATERNITY, INC.,
a nonprofit organization on behalf of members residing in Georgia,
SIXTH DISTRICT OF THE AFRICAN METHODIST EPISCOPAL CHURCH,
a Georgia nonprofit organization,
ERIC T. WOODS,
KENNETH GLENN,
PHIL BROWN, et al.,

Plaintiffs-Appellees,

UNITED STATES OF AMERICA,

Intervenor-Appellee,

*versus*

SECRETARY, STATE OF GEORGIA,

in his official capacity,

Defendant-Appellant.

---

Appeals from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:21-cv-05337-SCJ

---

---

No. 23-13916

---

COAKLEY PENDERGRASS,
TRIANA ARNOLD JAMES,
ELLIOTT HENNINGTON,
ROBERT RICHARDS,
JENS RUECKERT, et al.,

Plaintiffs-Appellees,

*versus*

SECRETARY, STATE OF GEORGIA,

Defendant-Appellant,

ACTING CHAIR OF THE STATE ELECTION BOARD, et al.,

Defendants.

---

Appeals from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:21-cv-05339-SCJ

---

---

No. 23-13921

---

ANNIE LOIS GRANT,
QUENTIN T. HOWELL,
ELROY TOLBERT,
THERON BROWN,
TRIANA ARNOLD JAMES, et al.,

Plaintiffs-Appellees,

UNITED STATES OF AMERICA,

Intervenor-Appellee,

*versus*

SECRETARY, STATE OF GEORGIA,

Defendant-Appellant,

SARA TINDALL GHAZAL, in her official capacities as member of the State Election Board, et al.,

Defendants.

---

Appeals from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:22-cv-00122-SCJ

---

Before ROSENBAUM, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

Defendant-Appellant, Georgia's Secretary of State ("Secretary" or "Georgia") appeals the district court's judgment, which permanently enjoined the state from employing several redistricting maps (SB 2EX, SB 1EX, and HB 1ES) in any future election. The district court held that Georgia's maps violated Section 2 of the Voting Rights Act, as amended and codified at 52 U.S.C. § 10301.

Until April of this year, courts in this Circuit operated under the forty-year-old *Gingles* framework for racial gerrymandering and

other vote-dilution claims. *See, e.g.*, *Allen v. Milligan*, 599 U.S. 1 (2023) (discussing *Thornburgh v. Gingles*, 478 U.S. 30 (1986)). But in April, the Supreme Court issued *Louisiana v. Callais*, modifying the *Gingles* framework. 608 U.S. ___, 146 S. Ct. 1331 (2026). In doing so, *Callais* changed the existing understanding of vote-dilution cases. Perhaps most significantly, *Callais* held that Section 2's remedial power to compel race-based redistricting falls within Congress's Fifteenth Amendment authority only "when the circumstances give rise to a strong inference that intentional discrimination occurred." 146 S. Ct. at 1155–56.

The Supreme Court issued *Callais* after briefing closed in this case and long after the district court's judgment. The appropriate response to such a significant change of law is to vacate and remand, so the district court may reconsider, in the first instance, whether Georgia's redistricting plans violate Section 2 of the Voting Rights Act under the updated *Callais* framework. We do so here.

**A.**

Georgia challenges the district court's application of Section 2 of the Voting Rights Act. But the Section 2 landscape is different now than it was when Georgia filed its appeal. Georgia and Plaintiffs recognize as much, and few could deny it. *Callais*, the landmark decision the Supreme Court issued this year, clarifies the constitutional guardrails Section 2 must stay within and the factors Section 2 plaintiffs must prove.

*Callais* arose as the result of two challenges to Louisiana's redistricting maps. Like Georgia, Louisiana redrew its congressional districts following the 2020 census. *Callais*, 146 S. Ct. at 1148. Louisiana's initial map created one majority-Black district out of six total districts. *Id.* Black voters challenged this map under Section 2 on a vote-dilution theory. *Id.*; *see generally Robinson v. Ardoin*, 605 F. Supp. 3d 759 (2022). Their challenge was successful, and the U.S. District Court for the Middle District of Louisiana ordered Louisiana to create a second majority-Black district. *Callais*, 146 S. Ct. at 1149. Louisiana complied. *Id.* at 1150–51. Then, a group of non-minority voters challenged Louisiana's new map as a racial gerrymander that violated the Fourteenth and Fifteenth Amendments. *Id.* at 1151–52. This second challenge is the subject of *Callais*, which worked its way through the federal judiciary to the Supreme Court.

In addressing the non-minority voters' claim that Louisiana's intentional creation of a second majority-minority district was unconstitutional, the Supreme Court sought to resolve a question that *Gingles* and other Section 2 litigation had not. *Id.* at 1143. That question was "whether compliance with the Voting Rights Act provides a compelling reason that may justify the intentional use of race in drawing legislative districts." *Id.*

In answering that question, first, the Supreme Court held that, "under the best reading of the statutory text," Section 2 of the VRA was a constitutional exercise of Congress's authority to enforce the Fifteenth Amendment. *Id.* at 1155–56. But second, based

on a close reading of the statute's text, the Court held that Section 2 "properly fit[s] within Congress's Fifteenth Amendment enforcement power" only if it is an "enforcement of the Fifteenth Amendment's prohibition on *intentional* racial discrimination." *Id.* at 1155. Thus, liability under Section 2 arises "only when the circumstances give rise to a strong inference that intentional discrimination occurred." *Id.* at 1156. "While that interpretation does not demand a finding of intentional discrimination," *id.*, *Callais*'s strong-inference standard moves away from the earlier effects standard.

Among other teachings, *Callais* emphasized that Section 2 plaintiffs must account for partisan concerns when proposing alternative redistricting plans. They must "rul[e] out the competing explanation that political considerations dominated the legislature's redistricting efforts. If either politics or race could explain a district's contours, the plaintiff has not cleared its bar." *Id.* at 1157 (quoting *Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 9–10 (2024)).

Rather, since the Court's decision in *Rucho v. Common Cause*, "courts must treat partisan advantage like any other race-neutral aim: a constitutionally permissible criterion that States may rely on as desired." *Id.* at 1156 (discussing *Rucho v. Common Cause*, 588 U.S. 684 (2019)). Thus, under *Callais*, any proposed redistricting plan that fails to disentangle race and partisan goals wrongly intrudes on a state's prerogative to draw districts based on nonracial factors, and Section 2 liability cannot arise. *Id.* at 1156–57.

*Callais*'s central holdings reverberate through the Section 2 analysis. Although *Callais* did not overturn the *Gingles* framework, it expressly amended it. *Id.* at 1157 ("We need only update the [*Gingles*] framework so it aligns with the statutory text and reflects important developments since we decided *Gingles* 40 years ago.").

With respect to the first *Gingles* precondition—that plaintiffs must show it's possible to create a large, geographically compact, and reasonably configured district that is majority-minority—the Court held that "plaintiffs cannot use race as a districting criterion" when creating illustrative maps with their desired number of majority-minority districts. *Id.* at 1159. In addition, any proposed map "must meet all the State's legitimate districting objectives," including specified political goals like achieving a particular distribution of partisan voters or a margin of victory for an incumbent. *Id.* The Court determined that these changes are necessary to "disentangle race from politics and other constitutionally permissible considerations." *Id.* (cleaned up).

Consistent with the changes to the first precondition, *Callais* provides that "[t]o satisfy the second and third [*Gingles*] preconditions—politically cohesive voting by the minority and racial-bloc voting by the majority—[] plaintiffs must provide an analysis that controls for party affiliation." *Id.* In other words, Section 2 plaintiffs must be able to show that voters are engaged in racial-bloc voting because of race, not partisan affiliation. *Id.*

Finally, the Court held that the totality-of-the-circumstances inquiry must center on evidence of "present-day intentional racial

discrimination regarding voting." *Id.* at 1160. This differs from *Gingles*, which directed district courts to review the totality of the circumstances and "whether the political process is equally open to minority voters" based on "a searching practical evaluation of the 'past and present reality.'" *Gingles*, 478 U.S. at 79. After *Callais*, courts must afford less weight to "[d]iscrimination that occurred some time ago" and "present-day disparities that are characterized as the ongoing 'effects of societal discrimination.'" *Callais*, 146 S. Ct. at 1160.

**B.**

On appeal, Georgia argues that the district court erred in finding that the state's Enacted Plans violated Section 2 of the VRA. In particular, Georgia says that Plaintiffs needed to show that race, not partisanship, caused the vote-dilutive effects of Georgia's Enacted Plans but failed to do so. Georgia also asserts that the district court misapplied *Gingles* and the Senate Factors, so it wrongly found that Black Georgians experienced vote-dilution at all.

*Callais* casts Georgia's arguments in a new light. The district court, however, did not have the benefit of *Callais*. So we will afford the district court the opportunity to reassess this case under the new standard.

We routinely remand cases when the Supreme Court issues an intervening decision that may affect the district court's analysis of the case. *See, e.g.*, *Powell v. Sch. Bd. of Volusia Cnty.*, 86 F.4th 881, 883 (11th Cir. 2023); *United States v. Republic of Honduras*, 75 F.4th

1288, 1289 (11th Cir. 2023) (en banc). We think this case warrants such a remand.

*Callais* and the updated *Gingles* framework "leave[] us with several questions that the district court did not (and likely did not think it had to) answer." *Comparelli v. Republica Bolivariana De Venezuela*, 891 F.3d 1311, 1315 (11th Cir. 2018). Many of these questions are intensely fact-based. The district court should resolve these questions in the first instance. *Callahan v. United States Dep't of Health & Hum. Servs. through Alex Azar II*, 939 F.3d 1251, 1266 (11th Cir. 2019) ("[Q]uestions, which are unavoidably fact-sensitive, should be addressed first by the district court.").

The Supreme Court has reached the same conclusion on Section 2 cases pending before it issued *Callais*. Indeed, the Court has vacated and remanded multiple redistricting cases for further consideration in light of *Callais*. *See* Order, *State Bd. of Election Comm'rs v. Miss. State Conf. of the NAACP*, No. 25-234 (U.S. May 18, 2026); Order, *Turtle Mountain Band of Chippewa Indians v. Howe*, No. 25-253 (U.S. May 18, 2026). Circuit courts, including a panel of this Court, have followed suit. *See Ala. State Conf. of the NAACP v. Sec'y of State for Ala.*, No. 25-13007, 2026 WL 1649570, at *1 (11th Cir. June 8, 2026) ("In light of the Supreme Court's recent practice, our precedent, and the agreement between the parties that vacatur is appropriate, we vacate and remind for the district court to give these cases further consideration in light of *Callais* . . . ."); *White v. State Bd. of Election Comm'rs*, No. 25-60506, Dkt. 52-2 (5th Cir. May

11, 2026); Order, *Nairne v. Landry*, No. 24-30115, Dkt. 386-1 (5th Cir. May 7, 2026). We think that's a sound approach.

Plaintiffs suggest that, if we must remand the case for further consideration, we should vacate only what is necessary and pick out which aspects of *Callais* are already satisfied. We decline. By its nature, the *Gingles* analysis is fact-intensive, and those facts may take new shapes under the scrutiny of the new *Gingles* framework. So we remand to the district court to consider the evidence in light of *Callais* and to take any other appropriate action.

## CONCLUSION

For the foregoing reasons, we vacate the judgment and remand to the district court for further proceedings consistent with *Callais*.

**VACATED and REMANDED.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

August 25, 2026

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 23-13914-AA ; 23-13916 -AA ; 23-13921 -AA
Case Style: Alpha Phi Alpha Fraternity, Inc., et al v. Secretary, State of Georgia
District Court Docket No: 1:21-cv-05337-SCJ

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing or rehearing en banc is governed by 11th Cir. R. 40-2. Please see FRAP 40 and the accompanying circuit rules for information concerning petitions for rehearing. The Court has proposed amending 11th Cir. R. 40-1 (Number of Copies) to no longer require paper copies of a petition for panel rehearing or a petition for rehearing en banc. Based on the proposed amendment, other than an original petition filed in paper by a non-electronic filer, **parties are asked not to submit any paper copies** of a petition for panel rehearing or a petition for rehearing en banc.

Costs
No costs are taxed.

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or

cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |